

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| H.S. STANLEY, JR., ET AL | CIVIL ACTION |
| versus | NO. 02-1235 |
| CLARE W. TRINCHARD, ESQUIRE, ET AL | SECTION: E/4 |

### ORDER and REASONS

Two motions for summary judgment are before the Court: (1) motion by Clare W. Trinchard, Leigh Ann Schell, Trinchard & Trinchard L.L.C., and Clarendon National Insurance Company[1] (hereinafter "the Trinchard defendants") for summary judgment on the bankruptcy issues (document 242); and, (2) motion by the Trinchard defendants for summary judgment on peremption and liability issues (document 246). The matter was taken under submission after oral argument was heard on July 6, 2005. After considering the record, the motions and memoranda, the evidence, the parties oral argument and the law, and for the following reasons, the motion for summary judgment on bankruptcy issues is DENIED, and the motion for summary judgment on peremption and liability issues is GRANTED.

### BACKGROUND

The following facts are uncontested. In 1991, Gerald Burge

---

[1] The Trinchard defendants' malpractice insurer.



filed a civil rights action ("the Burge litigation") against the St. Tammany Parish Sheriff, Jack Strain at the time of trial ("Sheriff Strain"), former Sheriff's Deputy Gary Eugene Hale[2] ("Hale") and their insurer, Northwestern National Insurance Company of Milwaukee, Wisconsin ("NNIC"). From 1991 to May of 1995, NNIC, Sheriff Strain and Hale were all represented by the defendants herein. In May, 1995, NNIC appointed the Trinchard defendants to represent Sheriff Strain and Hale, and NNIC secured other counsel to represent its interests in the Burge litigation. Several months prior to trial in this matter, the Trinchard defendants and counsel for NNIC negotiated a settlement with Burge that fully released NNIC, but only partially released Sheriff Strain and Hale from liability for Burge's claims against them. Pursuant to the terms of NNIC's insurance contract, the Trinchard defendants thereafter terminated their representation of Sheriff Strain and Hale. Sheriff Strain had previously employed additional independent counsel to represent him, but Hale did not. On May 10, 2001, after a jury verdict in favor of Burge, the Court entered judgment in favor of Burge and against Sheriff Strain and Hale for total of

---

[2] Gary Hale was employed as a St. Tammany Parish Sheriff's Deputy during 1980 and the early part of 1981. He left the department sometime in the spring of 1981.

> within one year of the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

L.S.A.-R.S. 9:5605A.

> The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

L.S.A.-R.S. 9:5605B.

"Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. C.C. Art. 3458. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation. La. Civ. Code art. 1762(1). Because peremption extinguishes or destroys the right, unlike prescription, peremption "may not be renounced, interrupted, or suspended." La. C.C. Art. 3461; Reeder v. North, 701 So.2d 1291, 1298 (La. 1997). "Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period." Reeder at 1298, citing Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La. 1986); Marsh Engineering, Inc., v. Parker, 883 So.2d 1119,

$4,075,000.00[3]. Gerald Burge v. St. Tammany Parish Sheriff's Office et al, C.A. No. 91-2321, E.D.La., rec. doc. 504. Sheriff Strain appealed; Hale, who appeared at the trial *in pro se,* did not. The judgment against Hale became final in September, 2001.

On October 15, 2001, Burge forced Hale into involuntary bankruptcy in the State of Mississippi in an attempt to collect his entire judgment against Hale. The plaintiff herein, H.S. Stanley, Jr. ("Stanley"), the trustee of Hale's bankruptcy estate, filed this suit in federal court on April 25, 2002, on behalf of Hale's bankruptcy estate. The lawsuit alleges malpractice in defendants Clare Trinchard's and Trinchard & Trinchard L.L.C.'s representation of Hale during the Burge litigation which exposed Hale to liability for the multimillion dollar judgment.[4] On Hale's behalf, Stanley alleges various acts of legal malpractice against the Trinchard defendants, beginning in May of 1995, the gist of which is that the

---

[3]The jury awarded damages as follows:
| | |
|---|---|
| Loss of freedom and imprisonment: | $2,000,000.00 |
| Physical/mental pain & suffering, emotional distress/anxiety: | $2,000,000.00 |
| Economic loss during imprisonment: | $ 250,000.00 |
| Legal expenses: | $ 50,000.00 |
| Total: | $4,300,000.00 |

The defendants were given credit for amounts paid prior to trial when Burge reached two settlements with various defendants, including the partial settlement between him, Hale and Sheriff Strain and NNIC for $75,000.00.

[4]The Stanley lawsuit also alleges bad faith of Northwestern National Insurance Company of Milwaukee, Wisconsin (NNIC). This claim is not at issue here.

Trinchard defendants continued to protect NNIC throughout their representation of Hale, to his detriment. As damages, the complaint seeks to recover the amount of the judgment against Hale, plus interest, costs and fees, from the Trinchard defendants. In his First Amended Complaint, filed on February 11, 2004, Stanley added Leigh Ann Schell, an attorney employed by Trinchard & Trinchard during the <u>Burge</u> litigation, as a party defendant.

These unliquidated claims are the only assets of Hale's bankruptcy estate, and the only claim against the estate is Burge's claim for payment of his entire judgment against Hale. Hale was discharged in the bankruptcy proceeding on December 18, 2002. Neither Stanley nor Burge contested Hale's discharge. On June 25, 2003, the Fifth Circuit reversed the judgment against Sheriff Strain. On January 12, 2004, the United States Supreme Court denied Burge's request for certiorari.

The Trinchard defendants moved for summary judgment on three grounds: (1) that the malpractice action is moot because Hale's discharge by the bankruptcy court extinguished the debt; (2) that the legal malpractice claims are perempted pursuant to L.S.A.-R.S. 9:5605; and (3) that as a matter of law the partial settlement reached with Burge on behalf of Hale was reasonable and the Trinchard defendants did not breach their duty to Hale, or

alternatively, that Stanley cannot prove that Hale suffered any damages or loss as a result of any malpractice on the part of the defendants.

Stanley argues (1) that Hale's discharge in the bankruptcy case does not extinguish the judgment debt that Stanley is attempting to collect from other available sources for the benefit of Burge, as judgment creditor; (2) that his claims against the Trinchard defendants were not prescribed because § 108 of the Bankruptcy Code tolls the running of prescription, or alternatively, because the date on which prescription began to run is disputed; and (3) that the facts surrounding the Trinchard defendants' representation of Hale are disputed, or alternatively, that Hale suffered general damages as a result of the Trinchard defendants' malpractice.

## ANALYSIS

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986). An issue is material if its resolution could affect the outcome of the action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In

deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. See <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 525 (5th Cir. 1999). However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." <u>Lawrence v. Univ. of Tex. Med. Branch at Galveston</u>, 163 F.3d 309, 311-12 (5th Cir. 1999), *quoting* <u>Wallace v. Texas Tech. Univ.</u>, 80 F.3d 1042, 1047-48 (5th Cir. 1996). The nonmoving party cannot satisfy its burden with "unsubstantiated assertions" or "conclusory allegations." <u>Id.</u>

I.

Federal bankruptcy law determines the scope of a debtor's bankruptcy estate. <u>In re: Segerstrom</u>, 247 F.3d 218, 223 (5th Cir. 2001), *citing* <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 204-05; 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). A debtor's bankruptcy estate consists of all "legal or equitable interests ... in property as of the commencement of the case", which includes any "causes of action belonging to the debtor at the time the case is commenced." <u>Segerstrom</u> at <u>id.</u>, *citing* 11 U.S.C. § 541(a)(1993) and <u>Louisiana World Exposition v. Federal Ins. Co.</u>, 858 F.2d 233, 245

(5th Cir. 1988). However, "[a] debtor's pre-petition rights in property, such as a cause of action, are determined according to state law." Segerstrom, at 224, *citing* Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

The Trinchard defendants argue that they are entitled to summary judgment because Hale's discharge in the bankruptcy proceeding renders Stanley's malpractice claims against them moot since Hale no longer suffers any damages caused by the alleged malpractice. They argue that this Court should look to McClarty v. Gudenau, 176 B.R. 788 (E.D. Mich. 1995) for guidance.[5]

Stanley argues that in Segerstrom, the Fifth Circuit expressly rejected McClarty, and the Bankruptcy Court's post-commencement discharge of Hale's debt to Burge does not render the malpractice action moot. He argues that the Segerstrom Court followed its earlier decision in In re Edgeworth, 993 F.2d 51, 53 (5th Cir. 1993), which held that a debtor's discharge does not extinguish the debtor's debt, and that whatever causes of action existed at the time the bankruptcy case was commenced became the property of the trustee. The Court agrees, although the Fifth Circuit did not

---

[5]The McClarty court held that a chapter 7 trustee could not recover an excess judgment against the debtor's former attorney through a legal malpractice action because the debtor's personal liability for the debt had been discharged. Segerstrom, at 225, n.4.

expressly reject <u>McClarty</u> in its <u>Segerstrom</u> decision.

The factual basis of <u>Segerstrom</u> is on all four corners with this case. *See generally* 247 F.3d at 221-22. Pursuant to a judgment against her in an underlying tort action, Segerstrom was liable for a multi-million dollar excess judgment after the non-settling insurer tendered the limits of its policy coverage. Segerstrom's attorney in the underlying tort litigation had been provided by her insurer. After the judgment creditors forced Segerstrom into involuntary bankruptcy, the trustee initiated a legal malpractice action against her attorney seeking to collect the amount of the excess judgment as damages.[6] Ultimately, the judgment creditors were the only claimants against the bankruptcy estate. Nine months after the malpractice action was filed, Segerstrom's personal liability for the excess judgment was discharged. Thereafter, the parties filed cross motions for summary judgment. The district court granted summary judgment against the bankruptcy estate on all claims. The district court's decision was based on two grounds: (1) the estate did not include a legal malpractice claim against Segerstrom's attorney because Segerstrom had denied any such claim in an affidavit she signed

---

[6]The trustee hired the attorneys who represented the judgment creditors in the underlying tort suit to prosecute the malpractice action.

shortly after the malpractice action was filed; and (2) any negligence by her attorney did not cause her any injury because her personal liability on the underlying judgment had been discharged. Id. at 223. For the second ground, the district court relied on McClarty.[7]

The Fifth Circuit affirmed on the first ground, but in footnote 4, expressly "d[id] not adopt the district court's holding" on the second ground. Instead, the Court acknowledged its prior holding in Edgeworth "that a discharged debt 'continues to exist' and judgment creditors 'may collect from any other source that may be liable.'" Segerstrom, at 225, n.4, citing Edgeworth, 993 F.2d at 53. The Fifth Circuit observed that Edgeworth did not control in Segerstrom because Edgeworth involved a nominal suit against the debtor for his own alleged medical malpractice and against his insurance company for its liability for its insured's negligence. Id. Instead, it looked to Texas law and concluded that under Texas law, the estate could not succeed on the merits of its malpractice action because Segerstrom had disavowed any malpractice claim she might have against her attorney.

This Court finds the Edgeworth and Segerstrom decisions – that the debtor's discharge in bankruptcy discharges only the

---

[7]See note 5, supra.

debtor's personal liability for his discharged debts but does not extinguish the debt itself -- mandates denial of the Trinchard defendants' motion for summary judgment based on Hale's discharge. The estate may still attempt to collect that debt on behalf of the estate's creditor from any other source that may be liable. The Court must now determine whether the Trinchard defendants are entitled to summary judgment pursuant to Louisiana law.

## II.

"When a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor. The trustee is subject to all defenses available against the debtor, and must prove all elements that the debtor herself would be required to prove." Segerstrom, at 224 (citations omitted).

### A.

The Trinchard defendants argue that Stanley's malpractice claims against them are perempted under Louisiana law. The limitation periods for an action for legal malpractice, whether based on tort or breach of contract, are set out in L.S.A.-R.S. 9:5605. A legal malpractice action must be filed:

> within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission or neglect is discovered or should have been discovered; however, even as to actions filed

-10-

1125-26 (La. App. 3 Cir. 2004), *writ denied*, 893 So.2d 73 (La. 2005). The only statutory exception to the three year peremptive period for a legal malpractice claim is a claim of fraud on the part of the attorney. L.S.A.-R.S. 9:5605E.

1.

Stanley first argues that his claims against the Trinchard defendants are timely based on 11 U.S.C. § 108(a), which provides as follows:

> If nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

Stanley argues that the partial settlement between Burge, NNIC, Sheriff Strain and Hale, the core "act" in the legal malpractice claim, was not signed by Burge until November 15, 2000, after which the Trinchard defendants "abandoned" Hale, so prescription could not have begun to run prior to that time. He claims that the involuntary bankruptcy petition was filed on October 16, 2001, within one year of that act, therefore prescription was tolled for another two years pursuant to § 108(a).

The Trinchard defendants argue that 11 U.S.C. § 108 applies

-12-

only to prescriptive periods, not to the peremptive periods spelled out in L.S.A.-R.S. 9:5605, citing <u>Spears Carpet Mills, Inc. v. Century National Bank of New Orleans</u>, 85 BR 86 (W.D.Ark. 1988) in support of the argument. The Court agrees.

In <u>Segerstrom</u>, the Fifth Circuit explained that "<u>Butner</u> espouses the principle that property rights within a state should remain the same within and outside of bankruptcy." <u>Segerstrom</u>, 474 F.3d at 224, *citing* <u>Louisiana World Exposition</u>, 858 F.2d at 252 ("<u>Butner</u> ... stresses that federal bankruptcy law should not be used to work a substantive change in the ordering of property interests under state law.") Pursuant to Louisiana law, the rights to which a peremptive period are attached are extinguished upon the expiration of that period, and that peremptive period cannot be interrupted or suspended. See La. C.C. Arts. 3458 and 3461; <u>Reeder</u>, 701 So.2d at 1298. The language in § 108 of the Bankruptcy Code referring to "a period within which the debtor may commence an action" describes a prescriptive period, not a peremptive period. To conclude otherwise would be to substantively alter property rights as defined in Louisiana law - it would allow a trustee to exercise a right to commence an action within the bankruptcy that the debtor would not have outside of the bankruptcy because that right had been extinguished by operation of law.

This conclusion is supported by the Fifth Circuit's decision in In re: Phillips, 948 F.2d 985 (5th Cir. 1991), stating:

> We construe the language of § 108 to extend the *prescription* period for prepetition claims to two years after entry of the order for relief, if *prescription* otherwise would run before that date. Accord Northern Specialty Sales, Inc. v. INTV Corp. (In re Northern Specialty Sales, Inc., 57 B.R. 557, 559 (Bankr.D.Or. 1986).

Id. at 987 (emphasis supplied). The issue in Phillips was whether § 108 extended the time for filing an action that accrued after a Chapter 11 case was filed, but before the matter was involuntarily converted to a Chapter 7 case. While that case did not address whether § 108 applied to a peremptive period, the Court's construction of that section of the Bankruptcy Code as a *prescriptive* period is instructive and persuasive. See also Spears Carpet Mills, Inc. v. Century National Bank of New Orleans, 85 B.R. 86, 88-89 (W.D.Ark. 1988)(bankruptcy court refused to apply § 108 to the Louisiana version of U.C.C. § 4-406(4), which Louisiana courts had construed as a "statute of peremption", *citing* William M. Barnett, Inc. v. First Nat'l Bank, 191 La. 945, 186 So. 741 (1939)); *and* In re Williams, 276 B.R. 394, 397 (E.D.Penn. 2002)(bankruptcy court refused to apply § 108 to 15 U.S.C. § 1635(f) (the Truth in Lending Act) which provides that "the 'right

of rescission [under the Act] shall expire' at the end of the time period", finding that the provision "talks not of a suit's commencement but of a right's duration", *citing* Beach v. Ocwen Federal Bank, 523 U.S. 410, 417, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998)).

2.

The next question the Court must determine is whether Stanley's claims are perempted pursuant to § 9:5605. Considering the conclusion that § 108(a) of the Bankruptcy Code does not toll peremption, the date on which each malpractice defendant was sued is the date against which the parties' peremption arguments must be judged. Pursuant to the express language of § 9:5605, Stanley's malpractice claims against the Trinchard defendants are timely if suit was filed within one year after the date of Hale's discovery of the alleged act, omission or neglect, *providing* suit was filed within three years of the date the alleged act, omission or neglect occurred.

a.

Clare W. Trinchard and Trinchard & Trinchard L.L.C. were named as malpractice defendants in Stanley's first Complaint on April 25, 2002. Both parties argue that Stanley's malpractice claim is a "single tort" for purposes of the peremptive period.

-15-

The Trinchard defendants argue that pursuant to the "continuous representation" rule, the claims against them are perempted because the acts, omissions or neglect complained of occurred beginning in May of 1995, when NNIC appointed them to represent Hale in the Burge litigation. Alternatively, they argue that any acts occurring prior to April 25, 1999, are perempted. They claim that Hale knew as early as September of 2000 that a settlement was being negotiated based on Burge's offer of settlement, and that after a settlement was reached, they would no longer represent him. They assert that Clare Trinchard and Leigh Ann Schell discussed the matter with Hale on more than one occasion, and that he understood the terms and implications of the proposed partial settlement. They finally claim that Hale discovered, or more accurately, was informed of their alleged malpractice when Mark Smith[8] met with him on March 14, 2001, prior to the trial, to try to persuade him to implicate the sheriff's department in the claimed violations of Burge's civil rights and told him that he believed Hale had a malpractice claim against his attorneys. In support of their position, the Trinchard defendants produced the affidavits of Leigh Ann Schell and Clare Trinchard, copies of the partial settlement

---

[8]Mark Smith is Burge's attorney in this litigation, and represented Burge in the underlying litigation, beginning in 1991.

agreement signed by Burge on November 15, 2000 and of a release of NNIC signed by Hale on January 13, 2001, copies of letters from Mark Smith to Hale dated August 24, 2001 and September 20, 2001. *See* Trinchard Memorandum on Peremption and Liability Issues, Exs. A, B and C.

Stanley argues that any acts, omissions or neglects that occurred after April 25, 1999, are neither prescribed nor perempted. He argues that the partial settlement agreement, signed by Burge on November 15, 2000, and the Trinchard defendants' subsequent abandonment of Hale's representation, are the ultimate results of the single tort of their negligent representation of Hale. Stanley asserts that Hale had no actionable malpractice claim prior to November 15, 2000. Opposition Memorandum on Peremption and Liability Issues, p. 15. He further claims that consideration of the ongoing professional relationship between Hale and the Trinchard defendants "argues in favor of a later rather than an early date as to the initiation of the tolling period." Stanley Opposition to Peremption and Liability Issues, p. 13. He finally argues that Hale did not discover his attorneys' alleged malpractice until September 11, 2001, when Smith again met with him to urge him to file a legal malpractice suit against his

attorneys.[9] In support of his arguments, Stanley produced excerpts from Smith's deposition and Hale's deposition, and Hale's affidavit dated August 20, 2002. See id., Ex. 1, Smith deposition, pp. 59-66; Ex. 2, Hale deposition, pp. 55-56.

The Court concludes that there are genuine factual issues as to when the peremptive periods (one year and three years) began to run regarding the malpractice claims against Clare Trinchard and Trinchard & Trinchard, L.L.C.

b.

Stanley first added claims against Leigh Ann Schell on February 11, 2004. The Trinchard defendants argue that the legal malpractice claims against Schell are clearly perempted because Stanley first brought his claims against her more than three and a half years after she left the Trinchard firm's employ on October 1, 2000. Stanley argues that for purposes of prescription, the amended complaint relates back to the original complaint so that prescription was interrupted as to his claims against Schell because she is a joint tortfeasor and therefore solidarily liable with the Trinchard defendants. See id., pp. 20-21. The Court

---

[9]Stanley also argues that Hale did not have a cause of action until the judgment against him was final in September of 2001. In Reeder, the Louisiana Supreme Court expressly held that pursuant to L.S.A.-R.S. 9:5605, a legal malpractice cause of action is extinguished three years after the "act, omission or neglect", regardless of when the malpractice is discovered, or whether the cause of action has accrued. 701 So.2d at 1297.