UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

H S STANLEY, JR.,                                    CIVIL ACTION
*In his capacity as Trustee of the Bankruptcy
Estate of Gary Eugene Hale*

versus                                               No. 02-1235

CLARE W. TRINCHARD, Esq., et al.                     SECTION: I/1

ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendants, Clare W. Trinchard, Trinchard & Trinchard, L.L.C., and Clarendon National Insurance Company (collectively "Trinchard").[1] For the following reasons, Trinchard's motion is **GRANTED**.

BACKGROUND

The facts of this case were articulated by the U.S. Fifth Circuit Court of Appeals:

> A. *Background*
>
> The instant case stems from the criminal investigation and prosecution of Gerald Burge [("Burge")] for the murder of Douglas Frierson in 1980. Burge was indicted for and convicted of Frierson's murder based in part on an investigation conducted by [Gary Eugene] Hale [("Hale")] when he was a detective in the St. Tammany Parish (Louisiana) Sheriff's Office ("the Sheriff's Office").[1] Several years after Burge was convicted, however, potentially exculpatory evidence was discovered (specifically, several of Hale's investigative reports) that had not been disclosed to the defense at or before Burge's trial. Burge was granted a new trial, which resulted in his acquittal on all charges.

---

[1]Rec. Doc. No. 399.

[1]Hale ended his employment with the sheriff's office sometime in the summer of 1981.

While awaiting his new trial, Burge had filed a § 1983 civil suit ("the Burge litigation") against (1) the Sheriff's Office, (2) the St. Tammany Parish District Attorney's Office, and (3) various individuals within each agency, including Detective Hale, for conspiring to deprive Burge of his right to a fair trial by suppressing exculpatory evidence.[2] Burge later added NNIC as a defendant for its role as the liability insurer of the Sheriff's Office during the first few years of the Frierson murder investigation.

*B. NNIC's Insurance Coverage*

In 1980, American Druggists' Insurance Company ("ADIC") issued a liability insurance policy ("the original ADIC policy") to the Louisiana Sheriff's Association.[3] This policy was renewable for 12-month terms and (if renewed) would remain in effect until September 1, 1983. It specified a coverage limit of $100,000 per occurrence.[4] ADIC subsequently issued an amended policy ("the amended ADIC Policy"), which restated the same terms and coverage period as the original ADIC Policy but increased the coverage limit to $1,000,000. The original ADIC Policy was marked "cancelled flat." The amended ADIC Policy indicated in a notation on the Declarations Page and in an amending endorsement that the effective date for the new $1,000,000 coverage limit was September 1, 1981, not the original commencement date of September 1, 1980. When ADIC became insolvent in 1986, its reinsurer, NNIC, assumed responsibility for any coverage under the ADIC policies pursuant to a "cut-through" reinsurance endorsement.[5]

---

[2] Burge's claims against the District Attorney's Office and individual prosecutors were dismissed on the basis of prosecutorial immunity. *Burge v. Parish of St. Tammany*, 1994 WL 86694 (E.D. La. March 9, 1994), *aff'd on other grounds*, 187 F.3d 452 (5th Cir. 1999). Burge voluntarily dismissed the Sheriff's Office as a defendant early in the case, but continued to pursue his claims against the Sheriff in his official capacity.

[3] The "Named Insureds" under the ADIC Policy were "each Sheriff [and his employees] of the Parishes of the State of Louisiana."

[4] For the purposes of this opinion, "coverage limit" will consistently refer to coverage limit *per occurrence*.

[5] "[A] 'cut-through' clause is any term within a reinsurance agreement under which the reinsurer assumes liability towards the original insured in the event of the liquidation of the reinsured." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 9:16 (3d ed.2006).

In the Burge litigation, NNIC filed a motion for summary judgment seeking dismissal, because the ADIC policies' coverage ended on September 1, 1983, and Burge's alleged injury did not "occur" until he was indicted in November 1983, or possibly until he was convicted in 1986. NNIC also asked the court to rule that the coverage limit applicable to any misconduct by Hale was $100,000, as specified in the original ADIC Policy, because his employment with the Sheriff's Office ended in the summer of 1981, before the $1,000,000 coverage limit in the amended ADIC Policy went into effect on September 1 of that year.

The district court denied NNIC's motion, ruling that the issues raised by NNIC were "hotly disputed" and worthy of full development at trial.[6] The coverage issue centered on whether the ADIC policies' definition of a covered "occurrence" was broad enough to encompass all conduct related to the Frierson murder investigation, including both Hale's actions while he was employed as a detective with the Sheriff's Office and his post-employment conduct during Burge's murder trial in 1986. The coverage limit issue concerned, *inter alia*, whether (1) marking the original ADIC Policy "cancelled flat" indicated an intention to make the terms of the amended ADIC Policy effective retroactively,[7] or (2) the Louisiana Sheriff's Association had intended for the *original* ADIC Policy to provide a $1,000,000 coverage limit.[8]

C. *NNIC's Settlement with Burge*

NNIC initially retained attorney Clare Trinchard to determine whether the ADIC policies provided coverage for the alleged misconduct of the Sheriff and his personnel. After receiving her review of the case, NNIC retained the Trinchard firm to represent the Sheriff, Hale, and NNIC

---

[6]The same district judge presided over both the Burge litigation and the instant case.

[7]"Canceled flat" is a term of art essentially meaning "void *ab initio*." See, e.g., *Highlands Ins. Co. v. Hobbs Group, L.L.C.*, 373 F.3d 347, 350 n. 4 (3d Cir. 2004) (discussing effect of "flat" cancellation of a surety bond); *Escobedo v. Estate of Snider*, 930 P. 2d 979, 985 (1997) ("[A]ccording to insurance industry usage, a 'cancellation' may under some circumstances be made 'flat,' meaning effective from the policy's inception, eliminating liability for either premiums due or losses incurred in the interim.").

[8]All of these coverage/coverage limits issues were [articulated] in a July, 2000 letter to NNIC from its counsel.

-3-

in the Burge litigation. Later, after deciding to dispute coverage under the ADIC policies, NNIC instructed the Trinchard firm to continue representing the Sheriff and Hale individually but retained separate counsel to represent NNIC's interests.

In November, 2000, shortly before the Burge litigation was to be tried, the Trinchard firm and NNIC's counsel negotiated a partial settlement with Burge. In exchange for $75,000, Burge agreed to (1) release NNIC fully from all liability under the ADIC policies and (2) release the Sheriff and Hale from liability, except for punitive damages, for any conduct that occurred during the ADIC policies' coverage period (September 1, 1980 to September 1, 1983). Burge expressly reserved his right to pursue claims against the Sheriff and Hale for conduct that occurred outside of the coverage period as well as for punitive damages at any time.

In January 2001, on the advice of the Trinchard defendants, Hale consented to the Burge settlement and signed a separate "Release and Acknowledgment" absolving that firm's former client, NNIC, from "any and all liability" under the ADIC policies, including "claims for indemnification, defense, legal fees and costs, [and] bad faith." The release itself did not specify the terms of the Burge settlement, particularly Burge's reservation of his right to sue Hale for conduct occurring outside of the ADIC policies' coverage period. After obtaining Hale's release of NNIC, the Trinchard defendants terminated their representation of Hale and the Sheriff.

D. *The Burge Trial and Hale's Bankruptcy Proceedings*

Burge's remaining claims against the Sheriff and Hale were tried in May 2001. The Sheriff was represented by other counsel, but Hale decided to represent himself, possibly believing that the only liability he faced post-settlement was for punitive damages, which he believed to be, at most, a remote possibility. After a jury verdict for Burge, the court entered judgment against the Sheriff and Hale, awarding Burge more than $4,000,000 in compensatory damages. The Sheriff appealed to [the Fifth Circuit, which] reversed the judgment against him. Hale, still unrepresented by counsel, did not appeal. The judgment against Hale became final in September 2001.

The following month, Burge forced Hale into involuntary bankruptcy in Mississippi. As the appointed trustee of Hale's bankruptcy estate, Stanley filed the

-4-

instant action against the Trinchard defendants[9] and NNIC in the district court in April 2002, alleging that (1) the Trinchard defendants were negligent in their representation of Hale[2] and (2) NNIC breached its

---

[9] Stanley later added as a defendant Leigh Ann Schell, an attorney employed by Trinchard & Trinchard during the Burge litigation. The district court dismissed all claims against Schell as time-barred, and Stanley does not challenge that ruling.

[2] In his amended complaint, Stanley asserts that the Trinchard defendants are liable for breaches of professional and fiduciary duties constituting malpractice. Rec. Doc. No. 44, p. 7, para. 33. Specifically, Stanley alleges that Claire W. Trinchard, Esq., is liable to Hale for the following breaches of her professional and fiduciary duties:

(1) Ostensibly abandoning her original representation of NNIC and purporting to become counsel of record for Hale and the Sheriff in the face of the clear and profound disputes over whether the tortuous conduct at issue occurred during the policy period and the amount of the applicable policy limits, all of which constitute a prohibited conflict of interest;

(2) Failing to fully and adequately disclose her own pecuniary and professional interest in a continuing business relationship with NNIC and/or other related insurers, in the face of unavoidable prejudice to Mr. Hale arising from that interest;

(3) Continuing to participate in the defense of NNIC, including the negotiation of a settlement between it and Burge, while facially representing Hale and the Sheriff, in the face of a clear conflict of interest between the insurer and the insureds;

(4) Failing to vigorously defend and advance the significant legal arguments available to Hale and the Sheriff in the face of efforts on the part of NNIC to deny and/or limit the coverage under the relevant policy;

(5) Continuing to facially represent both Hale and the Sheriff despite the existence of a clear and unavoidable conflict of interest in their relative defenses to the Burge claims;

(6) Limiting representation of Hale and the Sheriff to the policy period of the relevant policy, despite her obligation to fully defend the insureds and not the insurer, and either tacitly or overtly participating in a litigation strategy to shift whatever fault might be assessed against Hale and the Sheriff to a time frame outside of the policy period;

(7) Withdrawing as counsel of record for Hale only a few weeks before the start of trial, and thereby leaving him completely unrepresented, based on a provision in the relevant policy that, even if applicable, was not satisfied by the settlement in question in light of the unresolved dispute over policy limits;

(8) Failing to provide Hale with representation at trial, or to otherwise arrange for adequate representation for him;

(9) Failing to protect and preserve Hale's right to appeal the adverse judgment rendered against him by the trial court;

(10) Failing to fully and accurately communicate to Hale the above-stated conflicts of interest and thereby creating an atmosphere in which Hale reasonably believed that he was being adequately represented;

(11) Failing to adequately explain to Hale the effect the settlement agreement between Burge and NNIC had on his rights, obligations and exposure in the suit against him by Burge;

fiduciary duty of good faith and fair dealing in its settlement of the Burge litigation. Hale was discharged in the bankruptcy proceeding in December 2002, and neither Stanley as trustee nor Burge as Hale's only creditor contested the discharge.

*E. District Court Proceedings*

The Trinchard defendants and NNIC each filed a motion for summary judgment in the district court. The court granted both motions, concluding that (1) Hale's bankruptcy discharge made it impossible for Stanley to show that any damages resulted from the Trinchard defendant's alleged malpractice and (2) Stanley did not allege conduct by NNIC that would constitute a breach of the insurer's duty of good faith and fair dealing under Louisiana law.

*Stanley v. Trinchard*, 500 F.3d 411, 415-18 (5th Cir. 2007).

On February 17, 2006, Stanley filed a notice of appeal challenging the district court's rulings with respect to the

---

(12) Failing to adequately advise Hale to consult independent counsel, and to provide access to such counsel for him, prior to the settlement agreement between Burge and NNIC;
(13) Advising Hale to execute settlement documents that were clearly adverse to his interest despite her purported representation of him;
(14) Encouraging, advising, and/or participating in a litigation strategy with NNIC that exhibited obvious and egregious breaches of fiduciary duty on the part of the insurer relative to Hale; and
(15) Failing to properly and competently supervise the actions of her associate, Leigh Ann Schell, Esq., in connection with their representation of Hale in the *Burge* matter.

Rec. Doc. No. 44, pp. 7-9, para. 33.

Stanley also alleges that Trinchard & Trinchard, L.L.C., is liable for the following non-exhaustive breaches of its professional and fiduciary duties:

(1) Failure to exercise adequate review and/or supervision of the actions of one of its owners, Clare W. Trinchard, Esq.; and
(2) Vicarious liability for the negligence/fault of Clare W. Trinchard, Esq.;
(3) Failure to exercise adequate review and/or supervision of the actions of one of its associates/employees, Leigh Ann Schell, Esq.; and
(4) Vicarious Liability for the negligence/fault of Ms. Schell.

Rec. Doc. No. 44, p. 9, para. 34.

Trinchard defendants' and NNIC's motions for summary judgment.[3] On September 13, 2007, the Fifth Circuit reversed the district court's rulings with respect to those motions and remanded the above-captioned matter to the district court[4] for further proceedings.[5] Id. at 431. On November 8, 2007, the above-captioned matter was transferred to this Court.[6]

On February 6, 2008, Trinchard filed this motion arguing that no genuine issue of material fact exists with respect to Stanley's claims against Trinchard and, as such, Trinchard is entitled to

---

[3] Rec. Doc. No. 366.

[4] This case was originally remanded to Section "E" of this Court.

[5] In reversing the district court's ruling with respect to the Trinchard defendants' motion, the Fifth Circuit held that "at the time bankruptcy proceedings commenced, Hale had incurred a legal injury - in the form of an adverse money judgment - sufficient to allow Stanley to assert a legal malpractice claim against the Trinchard defendants on behalf of Hale's bankruptcy estate *and* that Hale's subsequent discharge from personal liability for that judgment had no effect on the right and duty of the trustee to pursue that claim." Stanley v. Trinchard, 500 F.3d 411, 425 (5th Cir. 2007). "The district court erred, therefore, in dismissing Stanley's legal malpractice claim against the Trinchard defendants based on its flawed conclusion that Hale suffered no compensable injury." Id. The Fifth Circuit further held that Stanley, as the trustee of Hale's bankruptcy estate, did not waive the bankruptcy estate's claims against the Trinchard defendants simply because Stanley failed to object to Hale's discharge from personal liability. Id. at p. 426.
In reversing the district court's ruling with respect to NNIC's motion, the Fifth Circuit held that "the bases for an *insured's* cause of action for a breach of the implied covenant of good faith and fair dealing are not limited to the prohibited acts in [La. Rev. Stat. Ann. § 22:1220(B)]." Id. at p. 427 (citing Theriot v. Midland Risk Ins. Co., 694 So. 2d 184, 188 (La. 1997). The Fifth Circuit explained that, in light of the fact that NNIC was Hale's insurer, and Stanley, as Hale's bankruptcy trustee, stands in Hale's shoes as the insured, Stanley's "cause of action against NNIC for breach of the covenant of good faith and fair dealing is not limited by [La. Rev. Stat. Ann. § 22:1220]." Id. at pp. 427-28. The Fifth Circuit concluded, however, that it could not determine whether NNIC's conduct constituted a breach of its duty of good faith and fair dealing because "the parties' disagreement on [that] issue is intertwined with their unresolved factual disputes over the ADIC policy limits and coverage period." Id. at p. 429.

[6] Rec. Doc. No. 382.

judgment as a matter of law.[7] Specifically, Trinchard argues that:

(1) Trinchard cannot be held vicariously liable for the acts or omissions of Schell;

(2) Stanley's claims against Trinchard are time-barred.

(3) Trinchard is not an insurer and did not owe any duties as such; and

(4) Stanley cannot satisfy his burden of proof to support a legal malpractice claim.[8]

## LAW AND ANALYSIS

### I. STANDARDS OF LAW

#### A. RULE 56 STANDARD

Summary judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of

---

[7] Rec. Doc. No. 399.

[8] Rec. Doc. No. 399-15.

material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

II. **DISCUSSION**

A.  **TRINCHARD'S VICARIOUS LIABILITY**

On February 11, 2004, Stanley filed his first amended complaint, which added Leigh Ann Schell, Esq., ("Schell") as a defendant.[9]  In his amended complaint, Stanley alleged for the first time that Trinchard was liable for improper oversight of Schell and that Trinchard was vicariously liable for Schell's alleged negligence.[10]

On August 1, 2005, Judge Livaudais found that Schell could not have done or participated in any act of malpractice "vis-a-vis her representation of Hale" after Schell terminated her employment with Trinchard on October 1, 2000.[11]  Considering the fact that Stanley did not add Schell as a defendant until 2004, Judge Livaudais found that Stanley's malpractice claims against Schell are perempted.[12]

---

[9] Rec. Doc. No. 44.

[10] *Id.* at p. 7, para. 33.

[11] Rec. Doc. No. 322, p. 20.

[12] *Id.* at p. 22.  Louisiana's legal malpractice statute provides:

> No action for damages against any attorney at law duly admitted to practice [in Louisiana], any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of the state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an agreement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within **one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission or neglect is discovered or should have been discovered;** however, even as to actions filed within one year from the date of such discovery, **in all events such actions shall be filed at the latest within three years from the date of the alleged act.**

La. Rev. Stat. Ann. § 9:5605A. (emphasis added).  "The one-year and three-year periods of limitation provided in Subsection A of [the legal malpractice statute] **are peremptive** periods within the meaning of Civil Code Article 3458 and, in

Based on Judge Livaudais' findings that Stanley's claims against Schell are perempted, Trinchard argues that it can no longer be held vicariously liable for Schell's alleged misconduct.[13] As such, Trinchard contends that Stanley's vicarious liability claims against Trinchard should be dismissed with prejudice.[14]

Stanley argues that the issue concerning Trinchard's alleged vicarious liability cannot be resolved on summary judgment because there remains a genuine issue of material fact concerning the date on which the peremptive periods applicable to Hale's legal malpractice claims commenced. According to Stanley, there are material disputes relating to Trinchard's vicarious liability which can only be resolved by a full trial on the merits.[15]

"Louisiana law allows a plaintiff to bring suit against an employer when the employee is completely dismissed, even when the employer's sole basis for liability is vicarious liability." *Bordelon v. Foster*, 2008 WL 482613, at *5 (E.D. La. Feb 19., 2008). "The important caveat is that the suit must not be prescribed." *Id.*

Notwithstanding Stanley's argument that there is a genuine issue of material fact concerning the exact date on which the

---

accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended." La. Rev. Stat. Ann. § 9:5605B.

[13]Rec. Doc. No. 399-15, p. 28.

[14]*Id.*

[15]Stanley asserts that the peremptive period in this case only began to run in September, 2001.

-11-

peremptive period applicable to Stanley's legal malpractice claims commenced,[16] Judge Livaudais previously held, and Stanley did not dispute, that the legal malpractice claims against Schell were perempted at the time Stanley added Schell as a defendant in February, 2004.[17] Considering the fact that Stanley alleged for the first time in February, 2004, after the malpractice claims against Schell were perempted, that Trinchard is vicariously liable for Schell's alleged misconduct, Stanley's vicarious liability claims against Trinchard are time-barred and, as such, they are dismissed with prejudice.[18]

B. **TRINCHARD'S DIRECT LIABILITY**

Louisiana law provides that legal malpractice claims must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission or neglect is discovered or should have been discovered."

---

[16] The Court notes that the Fifth Circuit recently found that "a cause of action against the Trinchard defendants for legal malpractice, if cognizable, accrued to Hale no later than **September[,] 2001**, when the judgment against [Hale] became final and Burge's attorney suggested to Hale that he might have a viable malpractice claim." Stanley, 500 F.3d at 419 (emphasis added). The Fifth Circuit declined, however, to determine whether the legal malpractice cause of action could have accrued prior to September, 2001. Id. at n. 16.

[17] See Stanley, 500 F.3d at p. 418, n. 9.

[18] The Court notes that generally, "'when the action or defense asserted in [an] amended [complaint] or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.'" Bens Brothers, L.L.C. v. Fidelity Nat'l Prop. and Cas. Ins. Co., 2007 WL 3488205, at *3 (E.D. La. Nov. 13, 2007) (quoting Marsh Engineering Inc. v. Parker, 883 So. 2d 1119, 1125 (La. App. 3 Cir. 2004)). "However, 'a supplemental petition filed after a peremptive period has run does not relate back to the time of filing of the original petition.'" Id. (quoting Robin v. Allstate Ins. Co., 844 So. 2d 41, 49 (La. App. 3 Cir. 2003)).

La. Rev. Stat. Ann. § 9:5605A. However, "even as to actions filed within one year from the date of such discovery, in all events[,] such actions shall be filed at the latest within three years from the date of the alleged act." *Id.* Both the one-year and three-year time periods applicable to legal malpractice claims are peremptive within the meaning of Articles 3458[19] and 3461[20] of the Louisiana Civil Code. La. Rev. Stat. Ann. § 9:5605B.

Trinchard contends that Hale discovered that he may have legal malpractice claims against Trinchard during a March, 2001, meeting with Burge's attorney, Mark W. Smith ("Smith"). As such, Trinchard argues that Stanley was required to assert the aforementioned malpractice claims on behalf of Hale's bankruptcy estate no later than March, 2002. In light of the fact that Stanley did not file the above-captioned lawsuit until April, 2002, Trinchard argues that Stanley's legal malpractice claims against Trinchard are perempted and, therefore, they must be dismissed with prejudice.

Stanley argues that regardless of whether the peremptive period applicable to the malpractice claims against Trinchard commenced in March, 2001, those claims are not perempted because Stanley, as the trustee of Hale's bankruptcy estate, filed the above-captioned lawsuit asserting malpractice claims against

---

[19]Louisiana Civil Code Article 3458 provides that, "[p]eremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."

[20]Louisiana Civil Code Article 3461 provides that "[p]eremption may not be renounced, interrupted, or suspended."

-13-

Trinchard within the time period set forth in Section 108(a) of the Federal Bankruptcy Code.[21]

> 11 U.S.C. § 108(a) provides, in pertinent part:
>
>> If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of –
>> (1) the end of such period, including any suspension of such period occurring on or after commencement of the case; or
>> (2) two years after the order for relief.

The Court notes that Judge Livaudais, in addressing the same or similar arguments presented herein, previously determined that, in light of the fact that the rights attached to a peremptive period extinguish upon the expiration of that period and that peremptive periods cannot be interrupted or suspended, applying Section 108(a) to peremptive periods would impermissibly alter substantive property rights as defined by Louisiana law.[22] Therefore, Judge Livaudais concluded that Section 108(a) did not affect the time period within which Stanley, as Hale's bankruptcy trustee, could assert legal malpractice claims against Trinchard.[23]

The Court adopts Judge Livaudais' reasoning and determination

---

[21]Rec. Doc. No. 411-3, p. 26.

[22]Rec. Doc. No. 322, p. 13.

[23]See Rec. Doc. No. 322, pp. 12-14. Based on his determination that there were genuine issues of material fact concerning the commencement of the peremptive period applicable to Stanley's malpractice claims, Judge Livaudais denied Trinchard's previous motion for summary judgment which asserted that Stanley's claims were time-barred. Rec. Doc. No. 322, p. 18.

that Section 108(a) is inapplicable to peremptive periods.[24] Therefore, Stanley was required to file the above-captioned lawsuit on behalf of Hale's bankruptcy estate within the peremptive periods set forth in Louisiana's legal malpractice statute.

The evidence presented by the parties establishes that in March, 2001, Hale either discovered or should have discovered that he had potential malpractice claims against Trinchard. Smith testified that during a meeting with Hale in March, 2001, Smith advised Hale that he may have claims against his attorneys as a result of their abandoning him.[25] Hale, himself, testified that the

---

[24] Although the Court has adopted Judge Livaudais' determination, it acknowledges that there is argument that Section 108(a) may extend or preempt the peremptive periods set forth in Louisiana's legal malpractice statute. *See, e.g., In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001); *see also In Re McIntire*, 2008 WL 1771861, at *10-11 (Bkr. E.D. Tenn. April 14, 2008); *Ambrose Branch Coal Co. v. Tankersley*, 106 B.R. 462, 466 (W.D. Vir. 1989).

[25] During his deposition, Burge's attorney, Smith, provided the following sworn testimony concerning a meeting with Hale that took place at a Shoney's restaurant prior to the Burge litigation:

> Q: What things did Mr. Hale tell you that led you to believe that he had not been fully advised about the settlement?
>
> SMITH: He was under the impression that the entire case was set to settle any moment, that he didn't have any clue as to why he was still in the case, he thought he'd been completely dismissed, with the exception of punitive damages, and that the judge had indicated that there was no good claim for punitive damages. He just seemed pretty much ill-informed.
>
> Q: When you say he was under the impression that the entire case was about to settle any moment, I'm not sure what you meant by that.
>
> SMITH: When I first met with Mr. Hale **in March**, he indicated he didn't understand why he even needed to be at the trial, that he'd been told that the sheriff was about to settle everything out, that everything was settled against him with the exception of punitive damages, and that the magistrate had already indicated that there wasn't a good claim for punitive damages and I was just barking up the wrong tree.

aforementioned meeting with Smith occurred and that the purpose of the meeting was to inform Hale that he may have malpractice claims against Trinchard.[26]

---

| | |
|---|---|
| Q: | Did you explain to [Hale] that, in fact, he did have a claim remaining against him for compensatory damages? |
| SMITH: | I told him I didn't think that was correct, that I thought I still had a claim against him. |
| Q: | Did you also tell him during this meeting that, in the event that you got a judgment against him, that he might have some rights against his attorneys for walking out on him, abandoning him? |
| SMITH: | I think I told him -- The last thing I told him when we walked out was, Mr. Hale, I believe the judge -- the evidence is very strong against you. I'm going to get a judgment against you, whether you believe it or not, and when it's over, let's sit down and talk and we'll talk about how you can get out of this judgment and **how you could be vindicated by the fact that your counsel had abandoned you.** |

Rec. Doc. No. 399-11, pp. 20-21 "Smith Dep. pp. 59-60" (emphasis added).

[26]During his deposition, Hale provided the following sworn testimony concerning his meeting with Smith at Shoney's prior to the Burge litigation:

| | |
|---|---|
| Q: | In the letter, [Smith] references the meeting many months ago that he had with you at Shoney's? |
| HALE: | Correct. |
| Q: | Was that the meeting before the trial? |
| HALE: | Right. |
| Q: | And he also says, the last paragraph, "At the meeting at Shoney's, I told you that if I should get a judgment against you I would like to sit down and speak with you about how you could possibly gain not only some measure of vindication but **also possible relief from the judgment against you as a result of being abandoned by your counsel.**" Do you see that? |
| HALE: | Yes. |
| Q: | Did Mr. Smith discuss that subject or those subjects with you at that meeting before trial? |
| HALE: | **That was the actual purpose of the meeting to discuss that.** |
| Q: | **And at that time he told you that the Trinchard firm and the Trinchard lawyers had done something wrong in withdrawing from your representation?** |

Based on the foregoing, the Court finds that the peremptive period applicable to Hale's malpractice claims against Trinchard commenced in March, 2001, as a result of Hale's meeting with Smith.[27] Therefore, in order to be timely, Hale had to assert his malpractice claims against Trinchard no later than March, 2002. Considering the fact that Stanley, as the trustee of Hale's

---

| | |
|---|---|
| HALE: | Right. |
| Q: | And he told you that if you were to sue them that you could get some vindication for yourself if a big judgment occurred? |
| HALE: | He mentions that but his primary concern was to obtain [Burge's] money and his fees and that was the main thing . . . . |

Rec. Doc. No. 399-11, pp. 13-14 "Hale Dep. pp. 112-113" (emphasis added).

The Court notes that there is no dispute that the meeting between Hale and Smith occurred in March, 2001.

[27]Regarding commencement of the peremptive period applicable to legal malpractice claims, the Louisiana Supreme Court has held that "peremption commences to run in legal malpractice cases when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice." *Teague v. St. Paul Fire and Marine Ins. Co.*, 974 So. 2d 1266, 1276 (La. 2008). "Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of [peremption]." *Id.* at 1275. "Notwithstanding, a claimant's mere apprehension that something may be wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice." *Id.* at 1276.
    The Louisiana Supreme Court has also held that the peremptive period applicable to legal malpractice claims commences from the date of the "act, omission, or neglect," regardless of whether the claimant has suffered an injury as a result thereof. *Reeder v. North*, 701 So. 2d 1291, 1296 (La. 1997). Considering the fact that a legal injury is a requisite element of a legal malpractice claim, the Supreme Court recognized that Louisiana's legal malpractice statute may seem unfair "in that a person's claim may be extinguished before he realizes the full extent of his damages . . . ." *Id.* Nevertheless, the Court explained that the enactment of the legal malpractice statute was exclusively a legislative prerogative and that it is only the Court's province to determine the applicability, legality, and constitutionality of that statute. *Id.* at 1296-97. The Supreme Court found that "there is no doubt that the Legislature intended that [no later than] three years after the 'act, omission, or neglect,' the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period." *Id.* at 1297.

bankruptcy estate, did not file the above-captioned lawsuit asserting the aforementioned malpractice claims until April, 2002, Stanley's malpractice claims against Trinchard are time-barred.[28]

In light of the fact that Stanley's malpractice claims are time-barred, the Court need not address the remaining issues raised by Trinchard in this motion, as they are all related to the issue of whether the factual allegations which form the basis of Stanley's malpractice claims lack merit.

Accordingly,

**IT IS ORDERED** that Trinchard's motion for summary judgment is granted and that all of Stanley's claims against Trinchard are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, July 7th, 2008.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[28] Pursuant to 11 U.S.C. § 541(a), Hale's cause of action against Trinchard for legal malpractice became part of Hale's bankruptcy estate in October, 2001, after Hale's bankruptcy proceedings commenced. 11 U.S.C. § 541(a) (providing, in pertinent part that, a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case"); see *Segerstrom*, 247 F.3d at 223-24 (explaining that "all legal or equitable interests" includes any causes of action belonging to the debtor at the time the case is commenced). As such, Stanley, as the trustee of Hale's bankruptcy estate, is the proper party to pursue Hale's cause of action against Trinchard for alleged legal malpractice.