UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| H.S. STANLEY, J.R., in his capacity as trustee of the bankruptcy estate of GARY EUGENE HALE | CIVIL ACTION<br><br>No. 02-1235 |
| VERSUS | SECTION I |
| CLAIRE W. TRINCHARD, ESQ., ET AL. | |

### ORDER AND REASONS

The defendants, Hugh Greene ("Greene") and Earnest Blanche ("Blanche"), have filed a motion to dismiss or, alternatively, a motion to stay the above captioned case.[1] The plaintiff has filed an opposition.[2] For the following reasons, defendants' motion to dismiss filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **GRANTED.**

### *BACKGROUND*

The facts of this case are set forth in two opinions by the U.S. Fifth Circuit Court of Appeals, *Stanley v. Trinchard*, 500 F.3d 411 (5th Cir. 2007)[3] and *Stanley v. Trinchard*, 579 F.3d 515 (5th Cir. 2009).[4] In the early 1980's, Gary Hale ("Hale"), as a detective employed by the St. Tammany Parish Sheriff, was insured under a policy issued by American Druggists Insurance

---

[1]R. Doc. No. 520.

[2]R. Doc. No. 530.

[3]R. Doc. No. 373.

[4]R. Doc. No. 483.

Company ("ADIC").[5] Northwestern National Insurance Company of Milwaukee, Wisconsin ("NNIC") reinsured ADIC and, by virtue of ADIC's insolvency, assumed responsibilities under the policy issued to Hale.[6] In 1991, Gerald Burge ("Burge") filed a lawsuit against Hale and the Sheriff of St. Tammany Parish pursuant to 28 U.S.C. § 1983, stemming from Burge's wrongful murder conviction in 1986 ("Burge lawsuit").[7] A multi-million dollar judgment against Hale forced him into involuntary bankruptcy in October 2001.[8]

H.S. Stanley, ("Stanley") in his capacity as a trustee of Hale's bankruptcy estate, filed the above captioned lawsuit in 2002.[9] Stanley alleges that in the course of defending and settling some of Burge's claims against Hale, NNIC breached a duty of good faith and fair dealing to Hale and that Hale's counsel committed malpractice.[10]

On December 16, 2009, the plaintiff filed a fifth amended complaint[11] and added allegations against NNIC and the newly added defendants, including Greene and Blanche.[12] Plaintiff claims that:

> 26(A) Northwestern, [Greene and Blanche], and/or the Northwestern Parent Companies were aware of and/or participated in the decision to limit the defense

---

[5] R. Doc. No. 1, p. 5; R. Doc. No. 373, p. 6.

[6] R. Doc. No. 1, p. 5; R. Doc. No. 373, pp. 6-7.

[7] R. Doc. No. 1, p. 5; R. Doc. No. 483, p.

[8] R. Doc. No. 373, pp. 9-10; R. Doc. No. 483, p. 4.

[9] R. Doc. No. 1; R. Doc. No. 483, p. 4.

[10] R. Doc. No. 1.

[11] R. Doc. No. 497.

[12] Defendant added claims against a number of companies that are allegedly affiliated with NNIC.

2

of Mr. Hale and the Sheriff solely to the policy period, from September 1, 1980 to September 1, 1983.

26(B). Northwestern, [Greene and Blanche], and/or the Northwestern Parent Companies also had specific knowledge that this Court substantially denied Ms. Gaudin's motion to establish the policy limits at $100,000 and limit the coverage under the policy to damages sustained by Mr. Burge after 1983 and stated it would not rule on those policy limits question until after a trial on the merits.

26(C). Notwithstanding that ruling, Northwestern, [Greene and Blanche] and/or the Northwestern Parent Companies participated in and/or had specific knowledge of (I) the rejection of offers to fully and finally settle the case against Mr. Hale for less than $1,000,000; (ii) the subsequent settlement agreement and mere *partial* release of Mr. Hale; and (iii) the cessation of representation by Mr. Hale's counsel despite Mr. Hale's continued right to a defense, all due to the fact, at least in part, that they considered Mr. Hale to be "judgment proof."[13]

The fifth amended complaint states that Greene and Blanche are also "liable" to Hale for all previously pled "breaches of fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud" attributable to NNIC.[14] The fifth amended complaint states that both Greene and Blanche are citizens of Ohio.[15]

On February 18, 2009, Greene and Blanche filed a motion to dismiss plaintiff's claims, arguing that this Court lacks personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, that plaintiff failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that plaintiff's claims are barred by prescription.[16] Alternatively, defendants argue that all claims should be stayed pending resolution of NNIC's state court

---

[13] R. Doc. No. 497, pp. 3-4.

[14] *Id.* at p. 6. The specific "breaches of fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud" alluded to in the fifth amended complaint are those that plaintiff has alleged against NNIC in plaintiff's complaint, R. Doc. No. 1, pp. 12-14 ¶ 36, and fourth amended complaint, R. Doc. No. 200, p. 5, ¶ 36.

[15] R. Doc. No. 497, p. 2.

[16] R. Doc. No. 520-1.

3

rehabilitation proceedings in Wisconsin.[17] The plaintiff has opposed the motion to dismiss and the motion to stay.[18]

*LAW AND ANALYSIS*

**A. Rule 12(b)(2) and Personal Jurisdiction**

In the context of a motion filed pursuant to Rule 12(b)(2), a plaintiff must establish a court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Where, as here, the Court rules without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a *prima facie* case that the Court has jurisdiction over a defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).[19] If the defendant disputes the factual bases for jurisdiction, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citations and quotations omitted). The court should not, however, act as a fact finder and it must construe all disputed facts in the plaintiff's favor. *Id.*

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth

---

[17]*Id.*

[18]R. Doc. No. 530.

[19] While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits. *See Walk Haydel & Assoc., Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). As "the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits" the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242-43 (citing *A&L Energy, Inc. v. Pegasus Group,* 791 So.2d 1266, 1270 (La. 2001)).

"As interpreted by the Supreme Court, the Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)(citing *Asarco, Inc. v. Glenara*, Ltd., 912 F.2d 784 (5th Cir.1990) and *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung*, 379 F.3d at 343.

> Where a defendant "has continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80, L.Ed.2d 404 (1984), the court may exercise "general jurisdiction" over any action brought against the defendant. *Id*. at 414, 204 S.Ct. 1868 n. 9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414, 104 S.Ct. 1868, n. 8.

*Luv N' care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

**A. Specific Jurisdiction**

The Fifth Circuit follows a three-step analysis for specific jurisdiction.[20] First, the Court must determine "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[21] *Nuivo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Luv N' care,* 438 F.3d at 470 (quoting *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 105 S.Ct. 2174, 85 L.Ed. 2d 528 (1985)).

Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Nuivo Pignone,* 310 F.3d at 378. The proper focus of the personal jurisdiction analysis is on the "relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).

Last, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the

---

[20]Specific personal jurisdiction is a claim specific inquiry. "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each of them. . . . the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006).

[21]"The 'minimum contacts' requirement can be established through contacts sufficient to assert either specific or general jurisdiction." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000).

defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271(citing *Burger King*, 471 U.S. at 482). In this inquiry the Court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care,* 438 F.3d at 473. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Johnston*, 523 F.3d at 615 (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). "The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there." *Id*. (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999).

### B. General Jurisdiction

Where specific jurisdiction is lacking, a court may nevertheless exercise "general jurisdiction" based on a defendant's contacts with the forum unrelated to the controversy. *Helicopteros Nacionales*, 104 S.Ct. at 1872. "To exercise general jurisdiction, the court must determine whether the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston*, 523 F.3d at 610 (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir.1999)). "The contacts must be reviewed in toto, and not in isolation from one another." *Id*. (citing *Holt Oil*, 801 F.2d 773 at 779)). "[V]ague and overgeneralized assertions that give no indication as to

7

the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* As with specific jurisdiction, after the plaintiff makes such showing, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable. *Id.* at 615.

## *DISCUSSION*

**A. Specific Jurisdiction**

Defendants contend that plaintiff has not made a prima facie case of specific personal jurisdiction because plaintiff has not alleged that defendants had minimum contacts, i.e., that defendants purposefully directed their activities at Louisiana or purposefully availed themselves of the privileges of conducting activities in Louisiana.[22] In his opposition to the defendants' motion to dismiss, plaintiff argues that because he "has properly plead claims of fraud against [Greene and Blanche] they cannot avoid the personal jurisdiction ramifications of their contacts with the State of Louisiana and their contacts in Louisiana dealing with Mr. Hale through NNIC."[23]

In the fifth amended complaint, plaintiff alleges that the defendants were "aware of and/or participated in the decision to limit the defense of Mr. Hale and the Sheriff solely to the policy period" and "participated in and/or had specific knowledge of" prior offers of settlement as to Hale and the cessation of Hale's legal representation by counsel. Plaintiff also alleges that defendants are liable for previously pled "breaches of fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud" attributable to NNIC.

---

[22]R. Doc. No. 520-1, pp. 7-8.

[23]R. Doc. No. 530, p. 23.

Although plaintiff alleges in his opposition that Greene and Blanche have "contacts in Louisiana dealing with Mr. Hale through NNIC," he fails to plead with specificity any such contacts in his fifth amended complaint and he does not provide any evidence of defendants' acts or communications directed at Louisiana. From plaintiff's allegations alone, the Court cannot discern what relationship Greene and Blanche have with NNIC[24] or how they might have been involved with the Burge lawsuit.

"Although jurisdictional allegations must be taken as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). Plaintiff's sparse allegations do not demonstrate the nonresident defendants' minimum contacts with the forum state which are required to establish a prima facie case of specific personal jurisdiction.

To the extent that plaintiff may be arguing that personal jurisdiction exists because the effects of Greene and Blanche's alleged misrepresentations and omissions were felt in Louisiana, this is also insufficient to confer jurisdiction. "Effects jurisdiction is premised on the idea that an act done outside a state that has consequences or effects within the forum state can suffice as a basis for personal jurisdiction if the effects are seriously harmful or highly likely to follow from the defendant's conduct." *Stroman Realty*, 513 F.3d at 486. "The effects test is not a substitute

---

[24] In affidavits attached to defendants' brief, Greene states that he is the director of litigation and claims for NNIC, R. Doc. No. 520-2, p. 1, and Blanche states that he is president of NNIC, R. Doc. No. 520-3, p. 1.

9

for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). "[F]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999). As discussed above, plaintiff has failed allege that defendants directed any specific acts toward Louisiana. Plaintiff has failed to make a prima facie case of specific personal jurisdiction.[25]

### B. General Jurisdiction

Plaintiff does not argue that the Court has general jurisdiction over Greene and Blanche. Plaintiff's fifth amended complaint fails to plead the facts necessary to support the "continuous and systematic" contacts necessary for the Court to exercise general jurisdiction over Greene and Blanche. *See Holt Oil*, 801 F.2d at 777.

Affidavits provided by Greene and Blanche in support of their motion to dismiss do not suggest that either defendant has systemic and continuous contacts with Louisiana. Blanche

---

[25]Moreover, affidavits submitted by defendants do not support a finding of specific personal jurisdiction. Greene states that he has "never traveled to or been directly engaged in any activities in Louisiana in connection with or relating to the subject matter of this action, other than in connection with the defense of NNIC in the present action after this action had been filed by the plaintiff." R. Doc. No. 520-2, p. 2. Greene further states that he has "not directed any written or oral correspondence to Louisiana in connection with or relating to the subject matter of this action, other than in connection with the defense of NNIC in the present action after this action had been filed by plaintiff." *Id*. Blanche states that he has "never traveled to or been directly engaged in any activities in Louisiana in connection with or relating to the subject matter of this action." R. Doc. No. 520-3, p. 2. Blanche also states that he has "not engaged in any written or oral correspondence to Louisiana in connection with or relating to the subject matter of this action, other than subsequent to the filing of this action and relating solely to NNIC's defense in this matter." *Id.*

states that he has never been a resident, domiciliary, or citizen of Louisiana and that he has never owned real estate in Louisiana.[26] Blanche also states that he has never paid taxes in Louisiana or held a bank account in Louisiana.[27] These facts do not support an exercise of general personal jurisdiction over Blanche.

Greene states that he is not currently a resident, domiciliary or citizen of Louisiana. Greene states that he lived and worked in Louisiana from 1968 to 1976 and that he travels occasionally to Louisiana to visit relatives.[28] The fact Greene lived and worked in Louisiana over thirty years ago, without more, is not sufficient to establish general jurisdiction.[29] *See Holt*, 801 F.2d at 779. In addition, even frequent trips to the forum state for personal purposes do not constitute the level of contact required to exercise general jurisdiction. *Id.* Examining the totality of Greene's contacts, the Court finds that they are not "continuous and systematic" such that this Court has general personal jurisdiction over Greene.

**C. Fiduciary-Shield Doctrine**

Last, to the extent that plaintiff is arguing that personal jurisdiction over Greene and Blanche exists because the Court has personal jurisdiction over NNIC, such is prohibited by the fiduciary-shield doctrine. Under the fiduciary-shield doctrine, it is well established that "an

---

[26]R. Doc. No. 520-3, p. 1.

[27]*Id.*

[28]R. Doc. No. 520-2, p. 2.

[29]The Court observes that Greene ceased to live in Louisiana well before the alleged occurrence of the facts that give rise to this lawsuit.

11

individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). As stated earlier, plaintiff's complaint does not identify defendants as either officers or employees of NNIC, but Green states in an affidavit that he is employed by NNIC as the director of litigation and claims[30] and Blanche states in an affidavit that he is the president of NNIC.[31]

The protections of the fiduciary-shield doctrine are not absolute. The doctrine does not apply, for instance, when courts are willing to disregard the corporate entity on the theory that the individual is the alter ego of the corporation or parent. *Id.*; *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 n. 7 (5th Cir. 2004). "In these cases, courts attribute a corporation's contacts with the forum state to an individual defendant for jurisdictional purposes." *Stuart*, 772 F.2d at 1197. Plaintiff has not alleged that Greene and Blanche are alter egos of NNIC.

## *CONCLUSION*

Because the Court finds that it lacks personal jurisdiction over defendants, it will refrain from considering defendants' additional arguments. For the reasons stated above,

---

[30]R. Doc. No. 520-2, p. 1.

[31] *Id*.

**IT IS ORDERED** that the motion to dismiss[32] filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, alleging a lack of personal jurisdiction over defendants Greene and Blanche, is **GRANTED** and plaintiff's claims against Greene and Blanche are **DISMISSED**.

**IT IS FURTHER ORDERED** that the remainder of defendants' motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DISMISSED AS MOOT** and that defendants' motion to stay is **DISMISSED AS MOOT**.

New Orleans, Louisiana, May 13, 2010.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[32] R. Doc. No. 520.