# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA


**KIMBERLY LENTZ, in her capacity as**                                    **CIVIL ACTION**
**interim trustee of the bankruptcy estate of**
**GARY EUGENE HALE**                                                          **No. 02-1235**

**VERSUS**                                                                      **SECTION I**

**CLAIRE W. TRINCHARD, ESQ., ET AL.**

## <u>ORDER AND REASONS</u>

Before the Court is a motion to dismiss or, alternatively, to stay the above-captioned

case, filed by Armco Insurance Group, Inc., Armco Financial Services Corporation, AFSG

Holdings Company, Inc., AKS Investments, Inc., and AK Steel Corporation ("AK defendants").[1]

Also before the Court is a motion to dismiss or, alternatively, to stay the above-captioned case

filed by Northwestern National Insurance Company of Milwaukee, Wisconsin ("NNIC").[2] The

plaintiff has filed an opposition.[3]

## *BACKGROUND*

The facts of this case are set forth in two opinions by the U.S. Court of Appeals for the

Fifth Circuit, *Stanley v. Trinchard*, 500 F.3d 411 (5th Cir. 2007)("*Trinchard I*")[4] and *Stanley v.*

*Trinchard*, 579 F.3d 515 (5th Cir. 2009)("*Trinchard II*").[5]  In the early 1980's, Gary Hale

---

[1]R. Doc. No. 507.

[2]R. Doc. No. 519.

[3]R. Doc. No. 530.

[4]R. Doc. No. 373.

[5]R. Doc. No. 483.

("Hale"), a detective employed by the St. Tammany Parish Sheriff, was insured under a policy issued by American Druggists Insurance Company ("ADIC").[6] NNIC reinsured ADIC and, by virtue of ADIC's insolvency, assumed responsibility under the policy issued to Hale.[7] In 1991, Gerald Burge ("Burge") filed a lawsuit against Hale and the St. Tammany Parish Sheriff pursuant to 42 U.S.C. § 1983, stemming from Burge's 1986 wrongful murder conviction ("Burge lawsuit").[8] A multi-million dollar judgment against Hale forced him into involuntary bankruptcy in October 2001.[9]

In 2002, the appointed trustee[10] of Hale's bankruptcy estate brought claims against NNIC under Louisiana law, alleging that in the course of defending and settling some of Burge's claims, NNIC breached a duty of good faith and fair dealing to Hale. The trustee also alleged that Hale's counsel committed legal malpractice.[11]

On December 16, 2009, the plaintiff filed a fifth amended complaint[12] and added allegations against NNIC and the newly added defendants,[13] including the AK defendants.

---

[6]R. Doc. No. 1, p. 5; R. Doc. No. 373, p. 6.

[7]R. Doc. No. 1, p. 5; R. Doc. No. 373, pp. 6-7.

[8]R. Doc. No. 1, p. 5; R. Doc. No. 373, pp. 3-4.

[9]R. Doc. No. 373, pp. 9-10; R. Doc. No. 483, p. 4.

[10]R. Doc. No. 1; R. Doc. No. 483, p. 4. H.S. Stanley, Jr. ("Stanley"), in his capacity as a trustee of Hale's bankruptcy estate, filed the above captioned lawsuit in 2002. *See* R. Doc. No. 1. On May 19, 2010, Stanley was replaced by Kimberly Lentz who currently serves as interim trustee of Hale's bankruptcy estate. R. Doc. No. 559.

[11]R. Doc. No. 1.

[12]R. Doc. No. 497.

[13]Defendant added claims against two individuals, Hugh Greene and Earnest Blanche. On May 14, 2010, the Court dismissed plaintiff's claims against those individual defendants for lack of

Plaintiff claims that NNIC "is merely an alter ego of one or more of" the AK defendants and that the AK defendants are "all alter egos of each other."[14] Alternatively, plaintiff asserts that NNIC and "one or more of" the AK defendants "operated as a single business enterprise."[15] Plaintiff further alleges:

> 26(A) Northwestern, the Northwestern Individuals, and/or the [AK defendants] were aware of and/or participated in the decision to limit the defense of Mr. Hale and the Sheriff solely to the policy period, from September 1, 1980 to September 1, 1983.
> 26(B). Northwestern, the Northwestern Individuals, and/or the [AK defendants] also had specific knowledge that this Court substantially denied Ms. Gaudin's motion to establish the policy limits at $100,000 and limit the coverage under the policy to damages sustained by Mr. Burge after 1983 and stated it would not rule on those policy limits question until after a trial on the merits.
> 26(C). Notwithstanding that ruling, Northwestern, the Northwestern Individuals and/or the [AK defendants] participated in and/or had specific knowledge of (i) the rejection of offers to fully and finally settle the case against Mr. Hale for less than $1,000,000; (ii) the subsequent settlement agreement and mere *partial* release of Mr. Hale; and (iii) the cessation of representation by Mr. Hale's counsel despite Mr. Hale's continued right to a defense, all due to the fact, at least in part, that they considered Mr. Hale to be "judgment proof."[16]

The fifth amended complaint states that the AK defendants are also "liable" to Hale for all previously pled "breaches of professional and fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud" attributable to NNIC.[17] Plaintiff's fifth amended

---

[14]personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See* R. Doc. No. 557.

[14]R. Doc. No. 497, p. 2.

[15]*Id.* at p. 3.

[16]*Id.* at pp. 3-4.

[17]*Id.* at p. 6. The specific "breaches of fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud" alluded to in the fifth amended complaint are those that plaintiff has alleged against NNIC in plaintiff's complaint, R. Doc. No. 1, pp. 12-14 ¶ 36, and fourth amended complaint, R. Doc. No. 200, p. 5, ¶ 36.

complaint also seeks to annul a transfer of funds, made pursuant to an order of a Wisconsin state court, from NNIC to AFSG Holdings, Inc.[18]

On January 27, 2009, the AK defendants filed a motion to dismiss plaintiff's claims, arguing that this Court lacks personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and that plaintiff failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[19] [20]  On February 18, 2010, NNIC filed a motion to dismiss the allegations in plaintiff's fifth amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[21] Alternatively, both NNIC and the AK defendants argue that the Court should stay plaintiff's claims against NNIC and the AK defendants, pending resolution of NNIC's state court rehabilitation proceedings in Wisconsin.[22] The plaintiff has opposed the motions to dismiss and the motions to stay.[23]

---

[18]R. Doc. No. 497, pp. 4-5. Such claim was dismissed with plaintiff's consent on July 9, 2010. *See* R. Doc. No. 611.

[19]R. Doc. No. 507. In addition, the AK defendants argue that the Court "lacks subject matter jurisdiction" because Louisiana's Uniform Insurers Liquidation Law, La. Rev. Stat. 22:757(7), and Louisiana Supreme Court precedent in *All Star Advertising Agency v. Reliance Insurance Co.*, 898 So. 2d 369 (La. 2005) would strip a Louisiana court of subject matter jurisdiction over claims against NNIC because if its status as an insurance company in rehabilitation proceedings. *See* R. Doc. No. 507, pp. 2, 6-7.

[20]The AK defendants state in a section entitled "improper venue" that "for reasons more fully addressed above in the section regarding subject matter jurisdiction and based on the pending rehabilitation of NNIC in Wisconsin. . . the proper venue for any NNIC related claims is Wisconsin." R. Doc. No. 507, pp. 21-22. However, the AK defendants do not cite Rule 12(b)(3) of the Federal Rules of Civil Procedure. Accordingly, the Court construes such statements as argument in support of the AK defendants' motion to dismiss pursuant to Rule 12(b)(6).

[21]R. Doc. No. 519, p. 7.

[22]R. Doc. No. 507; R. Doc. No. 519.

[23]R. Doc. No. 530.

## MOTIONS TO DISMISS

*LAW AND ANALYSIS*

## A. Federal Question Jurisdiction

It is undisputed that this Court has diversity jurisdiction in the above-captioned case. In response to the defendants' motions to dismiss or, alternatively, to stay, plaintiff argues for the first time that this Court also has federal subject matter jurisdiction because the above-captioned case relates to the Hale bankruptcy, a case under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1130 (as amended, the "Bankruptcy Code"). *See In re Hale*, Ch. 7 Case No. 01-55539, (Bankr. S.D. Miss. filed Oct. 16, 2001). Because whether this Court has bankruptcy jurisdiction affects the Court's personal jurisdiction analysis, this issue must be addressed first.

28 U.S.C. § 1334(b) grants the district courts original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see also In Re Wood*, 825 F.2d 90, 92 (5th Cir. 1987). A matter is "related to" a case under title 11 if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (emphasis in original). "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankruptcy estate." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

*i. Plaintiff's Allegations with Respect to Bankruptcy Jurisdiction*

When plaintiff filed the above-captioned case in 2002, plaintiff expressly premised this Court's federal subject matter jurisdiction on diversity jurisdiction pursuant to 28 U.S.C. §

1332.[24] Defendants argue that plaintiff has waived the right to assert "related to" bankruptcy jurisdiction at this stage in the litigation, nearly eight years after plaintiff filed the original complaint.

The Court has permitted plaintiff to amend her complaint to allege "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). The Court further finds that plaintiff's original complaint contains sufficient allegations to state a basis for "related to" bankruptcy jurisdiction. "[W]here a complaint fails to cite the statute alleging jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute." *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980). Plaintiff's original complaint states that plaintiff is appearing in his capacity as "Trustee of the Bankruptcy Estate of Gary Eugene Gale, the adjudication of which is currently pending before the U.S. Bankruptcy Court for the Southern District of Mississippi, Southern Division, bearing Docket Number 01-55539 SEG with that court."[25] The original complaint describes the Hale bankruptcy and the trustee's commencement of the above captioned case as follows:

> 30. After the finality of the judgment, and because Mr. Hale has no significant assets otherwise susceptible to seizure, involuntary bankruptcy proceedings were initiated as to Mr. Hale in the venue of his domicile, the U.S. Bankruptcy Court for the Southern District of Mississippi. The proceeding bears Docket Number 01-55539 SEG with that court.

> 31. H.S. Stanley Jr., was appointed Trustee of the Bankruptcy Estate of Mr. Hale. Part of the statutory responsibility of this position, pursuant to and authorized by the U.S Bankruptcy Code, is to pursue and recover potential assets of the estate, including tort claims such as this one, on behalf of the estate.[26]

---

[24]R. Doc. No.1, p. 2.

[25]R. Doc. No. 1, p. 1.

[26]R. Doc. No. 1, p. 9 ¶¶ 30, 31.

The Court finds that plaintiff's original complaint contains sufficient facts to allege "related to" bankruptcy jurisdiction because the complaint states that plaintiff is asserting causes of action owned by the debtor, which became property of the estate, pursuant to 11 U.S.C. § 541, when the Hale bankruptcy was filed.[27] More importantly, on August 2, 2010, this Court granted plaintiff's motion to file a sixth amended complaint specifically stating that this Court had jurisdiction pursuant to 28 U.S.C. § 1334(b).

*ii. Plaintiff's Pre-petition Claims are the Property of the Bankruptcy Estate*

"Proceedings 'related to' the bankruptcy include . . . causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The commencement of a bankruptcy case creates an "estate," 11 U.S.C. § 541(a), which comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The reference [in 11 U.S.C. § 541(a)] to all 'legal or equitable interests' includes any 'causes of action belonging to the debtor at the time the case is commenced.'" *In re Segerstrom*, 247 F.3d 218, 223-24 (5th Cir. 2001)(quoting *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988)).

Courts look to state law to determine whether a debtor has a pre-petition cause of action. *Id*. at 224 (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136

---

[27] 11 U.S.C. § 541(a)(1) states in pertinent part: "The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case . . ." 11 U.S.C. § 541(a)(1).

(1979) (explaining that "[p]roperty interests are created and defined by state law" and, "[u]nless some federal interest requires a different result," should not be analysed differently "simply because an interested party is involved in a bankruptcy proceeding.")). "[S]tate law determines only whether a cause of action accrued to the debtor as of the commencement of the bankruptcy case. Once that determination has been made, federal law controls whether a trustee can maintain the cause of action on behalf of the bankruptcy estate." *Id*. (internal emphasis omitted).

Plaintiff asserts that on October 16, 2001, the date on which Hale's bankruptcy case was filed, Hale possessed certain causes of action against the defendants in this case and that such causes of action became the property of the bankruptcy estate. *See In re Wischan*, 77 F.3d 875, 877 (5th Cir. 1996) (finding a pre-petition personal injury cause of action to be property of the estate). Plaintiff asserts that all of plaintiff's claims are pre-petition claims and that such claims are, therefore, property of the estate.[28] NNIC and the AK defendants do not address whether plaintiff's causes of action against them accrued prior to the filing of the bankruptcy petition.

In *Trinchard I*, the Fifth Circuit found that plaintiff's "cause of action against the Trinchard defendants for legal malpractice, if cognizable, accrued to Hale *no later than September 2001*, when the judgment against him became final and Burge's attorney suggested to Hale that he might have a viable malpractice claim." 500 F.3d at 418-19. Therefore, such claim "accrued prior to the commencement of [Hale's] bankruptcy proceedings and thus (1) became

---

[28]Plaintiff conceded that the claim to annul the transfer asserted in the fifth amended complaint was not a pre-petition claim. Instead, plaintiff argued that such claim was "related to" the Hale bankruptcy. *See In re Wood*, 825 F.2d at 94. ("Generally, post-petition claims are not dischargeable in bankruptcy and, therefore, do not affect the estate. To fall within the court's jurisdiction, the plaintiff's claims must affect the estate, not just the debtor."). Plaintiff's claim to annul the transfer was dismissed on July 9, 2010, R. Doc. No. 611, and the Court need not address whether bankruptcy jurisdiction existed over such claim.

part of his bankruptcy estate, and (2) could be asserted by Stanley as trustee of Hale's bankruptcy estate."[29] *Id.* at 419. The Fifth Circuit did not determine the accrual date of plaintiff's claims against NNIC in *Trinchard I.* At the time of *Trinchard I*, plaintiff had also not yet asserted any claims against the AK defendants.

Plaintiff's claims against NNIC and the AK defendants for breach of fiduciary duty, breach of good faith and fair dealing, conspiracy, and fraud, involve alleged events and injuries that occurred prior to Hale's bankruptcy filing. Therefore, the Court agrees that plaintiff's claims against NNIC and the AK defendants accrued prior to the filing of the bankruptcy petition and, as such, they are  property of the estate. Such claims are, therefore, "related to" the bankruptcy estate and the Court has jurisdiction over such claims pursuant to § 1334(b).

### iii. Hale's Discharge

"To fall within the court's jurisdiction, the plaintiff's claims must affect the estate, not just the debtor." *In re Wood*, 825 F.2d at 94. When the bankruptcy estate no longer exists because the proceedings have been closed prior to the filing of a plaintiff's lawsuit, there is no bankruptcy to affect and plaintiff's action falls outside of this court's jurisdiction. *In Re Bass*, 171 F.3d 1016, 1022-23 (5th Cir. 1999). To date, Hale's bankruptcy case is still pending, although Hale has been discharged.

---

[29]The Fifth Circuit further observed that the "district court concluded that genuine factual issues existed as to the actual date the malpractice claim accrued to Hale, and we do not purport to resolve those issues on appeal. We simply recognized that, by all account, the legal malpractice claim against the Trinchard defendants accrued to Hale *no later than* September 2001." 500 F.3d at 419 n.16.

NNIC and the AK defendants argue that the fact that Hale has been discharged in bankruptcy makes the connection between the above-captioned case and the Hale bankruptcy "attenuated." However, the authority cited by defendants is factually distinguishable.

NNIC cites a case involving a chapter 11 debtor, *In re Craig's Stores of Texas, Inc*., 266 F.3d 388 (5th Cir. 2001), for the proposition that "the expansive definition of 'related to' has no application after the confirmation of the plan of reorganization."[30] However, the above-captioned case involves a chapter 7 bankruptcy and does not involve a plan of reorganization. *In re Torres*, 367 B.R. 478, 481 (Bankr. S.D.N.Y. 2007), also cited by NNIC, is distinguishable because in that case the discharged debtors sought "damages for themselves, not their estates," whereas the trustee in this case asserts claims on behalf of the bankruptcy estate. *Id.* at 481. In the last case cited by NNIC, *In re Mahoney*, 368 B.R. 579 (Bankr. W.D. Tex. Apr. 23, 2007), the court found that a debtor's state law claims, "if proven, would have no effect upon the administration of the bankruptcy case, which was concluded long prior to the events from which the tort is said to have arisen." *Id*. at 583. However, as stated, the Hale bankruptcy case is still pending and plaintiff's claims could have an effect on the bankruptcy estate.

**B. Personal Jurisdiction over the AK Defendants**

*i. Standard of Law*

In the context of a motion filed pursuant to Rule 12(b)(2), a plaintiff must establish a court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Where, as here, the Court rules without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a *prima facie* case that the Court has jurisdiction over a

---

[30]R. Doc. No. 569, p. 8.

defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).[31] If the defendant disputes the factual bases for jurisdiction, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citations and quotations omitted). The court should not, however, act as a fact finder and it must construe all disputed facts in the plaintiff's favor. *Id.*

It has been often stated that a "court can exercise personal jurisdiction over a defendant if the defendant has had minimum contacts with the forum and the maintenance of the suit in the forum will not offend traditional notions of fair play and substantial justice." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1257 (5th Cir. 1994). The AK defendants contend that because the AK defendants lack minimum contacts with Louisiana, the Court lacks personal jurisdiction over such defendants.[32] However, the Court has determined that this Court has "related to"bankruptcy jurisdiction pursuant to § 1334(b) and, therefore, the relevant inquiry is whether the AK defendants have minimum contacts *with the United States*. *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 790 (S.D. Tex. 2005).

Bankruptcy Rule 7004(d) provides for nationwide service of process in adversary proceedings arising under Title 11 of the United States Code.[33] [34] Fed. R. Bankr. P. 7004(d). *See*

---

[31] While the plaintiff must ultimately demonstrate that personal jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits. *See Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

[32] R. Doc. No. 520-1, pp. 7-8.

[33] Because the Court has "related to"bankruptcy jurisdiction pursuant to § 1334(b), the entire body of the Federal Rules of Bankruptcy Procedure, therefore, applies to this action. *See In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997)(holding that Bankruptcy Rules apply to an

*also In re NE 40 Partners, Ltd.*, 411 B.R. 352, 358 (S.D. Tx. 2009). In *Busch v. Buchman,*

*Buchman & O'Brien, Law Firm*, the Fifth Circuit held that "[w]hen a federal court is attempting

to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing

for nationwide service of process, the relevant inquiry is whether the defendant has had

minimum contacts with the United States." 11 F.3d 1255, 1258 (5th Cir. 1994). This is so

because when an action is in federal court on "related to" jurisdiction, the sovereign exercising

authority is the United States, not the individual state in which the federal court sits. *See*

*Diamond Mortgage Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990) (holding that

contacts between defendants and the State of Illinois had no bearing upon whether the district

court could exercise personal jurisdiction over defendants in a federal district court case based

on "related to" jurisdiction under 28 U.S.C. § 1334(b)); *see also In re Enron Corp.*, 511 F.

Supp.2d at 790. The due process test for the exercise of personal jurisdiction under the Fifth

Amendment in federal question cases where the governing statute authorizes nationwide service

of process is solely whether it comports with "traditional notions of fair play and substantial

---

action in federal district court based on "related to" jurisdiction under 28 U.S.C. § 1334(b));
*Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1236-37 (3d Cir. 1994) (same); *Diamond Mortgage Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1240-41 (7th Cir. 1990) (same).

[34]According to Bankruptcy Rule 7004(f), serving a summons in accordance with the other subsections of Bankruptcy Rule 7004 is sufficient to establish personal jurisdiction over a defendant in an adversary proceeding if personal jurisdiction is "consistent with the Constitution and laws of the United States." Fed. R. Bankr. P. 7004(f). Bankruptcy Rule 7004(a)(1) states that service may be made pursuant to Rule 4(h) of the Federal Rules of Civil Procedure, which provides for service of process on a domestic corporation. Fed. R. Bankr. Pro. 7004(a)(1); Fed. R. Civ. Pro. 4(h). The AK defendants do not dispute that they received service of process in accordance with Rule 4(h) of the Federal Rules of Civil Procedure.

justice." *Insurance Corp. of Ireland v. Compagnie des Bauites de Guinee,* 456 U.S. 694, 702-3, 102 S.Ct 2099, 72 L.Ed.2d 492 (1982).

*ii. Analysis*

The AK defendants clearly have contacts with the nation as a whole. Accordingly, the Court need only determine whether subjecting the AK defendants to personal jurisdiction offends the traditional notions of fair play and substantial justice.

Armco Insurance Group, Inc., Armco Financial Services Corporation, AFSG Holdings, Inc., and AK Steel Corporation are Delaware corporations with principal places of business in Ohio and AKS Investments, Inc. is a Ohio corporation with its principal place of business in Ohio.[35] The Court does not find that exercising personal jurisdiction over the AK defendants would be fundamentally unfair under the Due Process Clause of the Fifth Amendment. *See Busch*, 11 F.3d at 1258 ("Here, the due process concerns of the Fifth Amendment are satisfied. Given that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States."). Accordingly, the AK defendants' motion to dismiss[36] filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, alleging a lack of personal jurisdiction over the AK defendants, is **DENIED**.

**C. Motions to Dismiss Pursuant to 12(b)(6)**

i. *Standard of Law*

*Rule 12(b)(6) of the Federal Rules of Civil Procedure*

---

[35]R. Doc. No. 497, p. 2; R. Doc. No. 507-2, pp. 2-6.

[36]R. Doc. No. 507.

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,*197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009)(quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

*Rule 9(b) of the Federal Rules of Civil Procedure*

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The particularity requirement of Rule 9(b) also governs a conspiracy to commit fraud." *In Re Enron Corp. Sec., Derivative & "ERISA" Litig*., 540 F. Supp. 2d 759, 766 (S.D. Tex. 2007)(citation omitted). "Pleading fraud with particularity in this circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc*., 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted). In other words, "the who, what, when, and where must be laid out. . . ." *Id*. at 178.

"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 901 (5th Cir. 1997). "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.' The particularity demanded by Rule 9(b) is supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)(quoting *Twombly*, 550 U.S. at 570). As the Fifth Circuit further explained:

> In cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology," [*Williams v. WMX Techs., Inc*., 112 F.3d 175, 178 (5th Cir.1997),] but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not "reflect a subscription to fact pleading[," *id.*,] and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after *Twombly* must make relief plausible, not merely conceivable, when taken as true.

*Id*. at 185-86.

*Fraud*

Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code Ann. art. 1953 (2008). "Fraud may also result from silence or inaction." *Id*. "The elements of a claim for intentional misrepresentation in Louisiana are: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec Medical Center v. Lakeview Anesthesia Assoc*., 527 F.3d 412, 418 (5th Cir. 2008)(internal emphasis omitted). "To establish a claim for intentional misrepresentation when it is by silence or inaction, plaintiffs also must show that the defendant owed a duty to the plaintiff to disclose the information." *Id*. *See also Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992)("To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information."). Such duty arises where a fiduciary or confidential relationship exists. *Kadlec Medical Center*, 527 F.3d at 420; *America's Favorite Chicken Co. v. Cajun Enters., Inc*., 130 F.3d 180, 186 (5th Cir. 1997); *Greene*, 593 So. 2d at 632.

*Conspiracy*

Louisiana Civil Code art. 2324 provides, in pertinent part: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. Civ. Code art. 2324 (2006). Louisiana does not recognize an independent tort of civil conspiracy. *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. Ct. App. 1998); *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001). "The actionable element

under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury." *Rhyce*, 173 F. Supp. at 535.

"To recover under a civil conspiracy theory of liability, the plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in plaintiff's injury." *Sullivan v. Wallace*, 859 So. 2d 245, 248 (La. Ct. App. 2003); *see also Butz*, 710 So. 2d at 1174. Ultimately, "[t]he plaintiff must . . . prove an unlawful act and assistance or encouragement that amounts to a conspiracy. This assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy." *Chrysler Credit Corp. v. Whitney Nat. Bank,* 51 F.3d 553, 557 (5th Cir. 1995).

### *ii. Motion to Dismiss Plaintiff's Fraud and Conspiracy Claims*

The AK defendants have filed a motion to dismiss plaintiff's allegations of fraud and conspiracy as to those defendants, arguing that "a close review [of] the original complaint, as well as the various amended complaints, show that there is not a single specific factual allegation regarding either 'conspiracy' or 'fraud.'"[37] Plaintiff opposes the motion to dismiss, contending that she has sufficiently pled such claims.

#### *Fraud*

Plaintiff contends that she has sufficiently alleged that the AK defendants are liable for "all of the specific acts of fraud alleged against NNIC . . [which], even prior to [plaintiff's filing

---

[37]R. Doc. No. 507-1, p. 19.

of the fifth amended complaint] . . . were found to constitute allegations of fraud by the [Fifth Circuit in *Trinchard I*]."[38]

In *Trinchard I*, the Fifth Circuit overruled the district court's grant of summary judgment with respect to plaintiff's claim that NNIC breached its duty of good faith and fair dealing. 500 F.3d at 429-30. The Fifth Circuit further rejected NNIC's argument that plaintiff's claims against NNIC for breach of the duty of good faith and fair dealing should be dismissed because Hale signed an agreement releasing NNIC from liability under the ADIC policies including claims for indemnification, defense, legal fees and costs, and bad faith. *Id*. at 430-31. The Fifth Circuit held:

> NNIC correctly notes that Stanley has not sought to rescind the release Hale executed in favor of NNIC, nor has he directly alleged that Hale was fraudulently induced to sign that release. We are satisfied, however, that those arguments are implicit in Stanley's discrete allegations of the acts and omissions of NNIC that are advanced as proving that NNIC breached its duty of good faith and fair dealing. As detailed above, Stanley contends that, in obtaining Hale's consent to the Burge settlement and the accompanying release in favor of NNIC, NNIC failed "to truthfully and accurately communicate essential information" about the ADIC policy limits and coverage period as well as the true extent of the liability he would continue to face after the Burge settlement was reached. We express no opinion whether NNIC's actions amounted to fraud, but we recognize that Stanley has effectively – albeit indirectly – alleged such fraud in the inducement of Hale's consent to the release in favor of NNIC. We therefore decline NNIC's invitation to affirm the district court's grant of summary judgment based on that release, leaving the ultimate determination of this issue to be made first by the district court on remand.

*Id*. at 431.

Having reviewed the parties' arguments and the plaintiff's complaints, the Court finds that the plaintiff has sufficiently pled fraud. The 12(b)(6) motion to dismiss plaintiff's fraud allegations is **DENIED.**

---

[38]R. Doc. No. 530, p. 27.

*Conspiracy*

The AK defendants contend that plaintiff has failed to plead facts supporting a conspiracy because plaintiff has not alleged an agreement to commit an intentional tort. In opposition, plaintiff argues that the complaint was amended to allege that such defendants participated in a conspiracy to commit fraud.[39]  The AK defendants' 12(b)(6) motion to dismiss plaintiff's conspiracy claim is **GRANTED** as the Court finds that, for the reasons stated in this Court's order on the Trinchard defendants' motion to dismiss, plaintiff has failed to allege a specific underlying intentional tort.[40]

### iii. Motion to Dismiss Plaintiff's Request to Pierce the Corporate Veil

Plaintiff's fifth amended complaint alleges that NNIC and "one or more of" the AK defendants are alter egos or, alternatively, NNIC and "one or more of" the AK defendants operate as a "single business enterprise."[41] The AK defendants contend that plaintiff has not alleged facts sufficient to pierce the corporate veil of NNIC or any of the AK defendants and that such allegations should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Choice of Law*

Pursuant to *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), courts with diversity jurisdiction apply the choice of law rules of the forum in which the court sits. Where courts have bankruptcy jurisdiction, they similarly apply the choice of law rules of the forum in which they sit over state law claims that do not implicate federal policy.

---

[39]*See* R. Doc. No. 530, p. 27.

[40]R. Doc. No. 581, pp. 13-14; p. 13, n.36.

[41]R. Doc. No. 497, pp. 2-3.

*Asarco LLC v. Americas Mining Co.*, 382 B.R. 49, 60-61 (S.D. Tex. 2007)(citing *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingham Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981)); *In re CLK Energy Partners, LLC,* 2010 WL 1930065 at *6 (W.D. La., May 12, 2010)(citing *Woods-Tucker*, 642 F.2d at 748)).[42] Louisiana courts have not explicitly ruled on the appropriate choice of law for veil piercing theories. However, the Fifth Circuit has predicted that Louisiana courts would look to the law of the state in which the defendant corporation was incorporated. *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002). The Court will look to Wisconsin alter ego jurisprudence because NNIC is a Wisconsin corporation.

   *Wisconsin Law*

   Wisconsin has not adopted the single business enterprise doctrine and, therefore, this particular remedy is not available against NNIC.[43] *Taurus IP, LLC v. Ford Motor Company*, 539 F. Supp. 2d 1122, 1126 (W.D. Wis. 2008). However, Wisconsin does permit the corporate form to

---

[42]Defendants have not alleged that plaintiff's state law claims implicate federal policy.

[43] Although the single business enterprise theory has not been adopted in some states, it has been adopted in Louisiana. *Bona Fide Demolition and Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc.*, 690 F. Supp. 2d 435, 443 n. 1 (E.D. La. 2010)(Vance, J.). Louisiana law provides that "when two or more corporations constitute a single business enterprise ("SBE"), a court may "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations."*Id.* at 443 (citing *Brown v. Auto. Cas. Ins. Co.*, 644 So. 2d 723, 727 (La. Ct. App.1994); *In re: Ark-La-Tex Timber Co.*, 482 F.3d 319, 335 (5th Cir. 2007); *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996)). "A SBE occurs when a corporation is found to be the alter ego, agent, tool or instrumentality of another corporation." *Id.* (internal citations and quotations omitted). SBE theory can be used to fuse either affiliated or unaffiliated corporations and, under Louisiana law, involves a consideration of eighteen non-exhaustive factors, including "whether one corporation has sufficient ownership interest in another to give it actual working control, whether common directors or officers exist, whether a unified administrative control apparatus is present, and whether the business functions of the companies are similar or supplementary." *Id.* at 444.

be disregarded under an "alter ego" theory. *Id*. (holding that "Wisconsin has not adopted the single enterprise doctrine" and analyzing plaintiff's claims pursuant to an alter ego theory).

Piercing the corporate veil is an equitable remedy. Pursuant to Rules 8 and 9 of the Federal Rules of Civil Procedure, litigants are required to plead claims, not remedies. *See Taurus v. Daimler Chrysler Corp.*, 519 F. Supp. 2d 905, 925 (W.D. Wis. 2007). The Wisconsin Supreme Court has held that piercing the corporate veil is a task that should only reluctantly be undertaken by a court. *Consumer's Co-op. of Walworth County v. Olsen*, 419 N.W.2d 211, 213 (1988).

According to the Wisconsin Supreme Court, piercing the corporate veil may be warranted "if corporate affairs are organized, controlled and conducted so that the corporation has no separate existence of its own and is the mere instrumentality of the shareholder and the corporate form is used to evade an obligation, to gain an unjust advantage or to commit an injustice." *Id*. at 214 (citing *Wiebke v. Richardson*, 83 Wis. 2d 359, 363, 265 N.W.2d 571, 573 (1978)). The "alter ego" doctrine ultimately requires proof of the following elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Olsen*, 419 N.W.2d at 217-18. Both inadequate capitalization and disregard of corporate formalities are significant factors in determining whether the corporate veil should be pierced. *Id* at 217.

*Analysis*

Plaintiff alleges that NNIC is "merely an alter ego of one or more of" the AK defendants "which are all alter egos of each other" and that NNIC and one or more of the AK defendants "failed to follow the statutory formalities for incorporation and/or the transaction of corporate affairs" and were undercapitalized.[44] Plaintiff has also alleged that such defendants commingled funds and "failed to provide separate bank accounts and bank records and/or failed to act as separate persons in dealings with its banks."[45]

The fifth amended complaint states that the AK defendants are "liable" to Hale for all previously pled "breaches of fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy [to commit fraud] and fraud" attributable to NNIC.[46]  The fifth amended complaint further states:

> 26(A). [NNIC] . . . and [the AK defendants] were aware of and/or participated in the decision to limit the defense of Mr. Hale and the Sheriff solely to the policy period, from September 1, 1980 to September 1, 1983.

---

[44]R. Doc. No. 497, p. 4. With respect to the alter ego remedy, plaintiff's complaint states in its entirety:
> 24(F). Northwestern National is merely an alter ego of one or more of the Northwestern Parent Companies, which are all alter egos of each other. Upon information and belief, Northwestern and one or more of the Northwestern Parent Companies commingled corporate and shareholder funds and assets, failed to follow the statutory formalities for incorporation and/or the transaction of corporate affairs, failed to provide separate bank accounts and bank records and/or failed to act as separate persons in dealings with its banks, were undercapitalized, and/or failed to hold regular shareholders or directors meetings.
*Id*. at pp. 2-3.

[45]*Id.*

[46]*Id.* at p. 6. The specific "breaches of fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud" alluded to in the fifth amended complaint are those that plaintiff has alleged against NNIC in plaintiff's complaint, R. Doc. No. 1, pp. 12-14 ¶ 36, and fourth amended complaint, R. Doc. No. 200, p. 5, ¶ 36.

26(B). [NNIC] . . . and [the AK defendants] also had specific knowledge that this Court substantially denied Ms. Gaudin's motion to establish the policy limits at $100,000 and limit the coverage under the policy to damages sustained by Mr. Burge after 1983 and stated it would not rule on those policy limits question until after a trial on the merits.

26(C). Notwithstanding that ruling, [NNIC] . . . and [the AK defendants] participated in and/or had specific knowledge of (i) the rejection of offers to fully and finally settle the case against Mr. Hale for less than $1,000,000; (ii) the subsequent settlement agreement and mere *partial* release of Mr. Hale; and (iii) the cessation of representation by Mr. Hale's counsel despite Mr. Hale's continued right to a defense, all due to the fact, at least in part, that they considered Mr. Hale to be "judgment proof."[47]

Whether the AK defendants exerted enough control over NNIC to warrant holding them liable as NNIC's alter egos for NNIC's alleged breaches of fiduciary duty, breaches of good faith and fair dealing, fraud and conspiracy to commit fraud cannot be determined at this stage. The Court finds that plaintiff has sufficiently alleged facts in support of her claims that could entitle her to the requested relief. Accordingly, the AK defendants' motion to dismiss plaintiff's alter ego theory of liability is **DENIED.**

### D. NNIC's Rule 12(b)(6) motion to dismiss pursuant to *All Star* and the AK defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction

NNIC argues that all claims against it should be dismissed pursuant to Rule 12(b)(6) because a Louisiana court would lack subject matter jurisdiction over plaintiff's claims against NNIC pursuant to Louisiana's Uniform Insurers Liquidation Law, La. Rev. Stat. 22:757, et seq., and Louisiana Supreme Court precedent in *All Star Advertising Agency v. Reliance Insurance Co.*, 898 So. 2d 369 (La. 2005).[48] Although the AK defendants concede that this Court has

---

[47]R. Doc. No. 497, pp. 3-4.

[48]The Court finds *MRCO, Inc. v. Jurabe-Jimenez*, 521 F.3d 88 (1st Cir. 2008), cited by NNIC, distinguishable. In that case, the First Circuit held that a dismissal pursuant to Rule 12(b)(6) of

diversity jurisdiction, those defendants argue that this Court lacks subject matter jurisdiction pursuant to *All Star*.

Federal courts routinely confront the conflict between their exercise of federal jurisdiction and state laws establishing exclusive claims proceedings for insurance insolvencies. *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 209 (5th Cir. 2003). However, the Fifth Circuit has explained that "[f]ederal courts normally manage this conflict by exercising *Burford* abstention to avoid interfering with state rehabilitation proceedings." *Id*. (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). In *Callon,* the Fifth Circuit rejected the argument that a federal court would lack subject matter jurisdiction because a state court rehabilitation proceeding left the federal court without jurisdiction. *Id.* "Obviously state legislatures can withhold jurisdiction from their own state courts but cannot control the jurisdiction of the federal courts." *Id.* at 209 n.6. Where "it [was] clear that the district court had diversity jurisdiction over the case[,] although federal courts usually apply state law when exercising diversity jurisdiction, they are not automatically stripped of subject matter jurisdiction over claims asserted against an insurer undergoing state insolvency or rehabilitation proceedings." *Id.* at 209.

---

the Federal Rules of Civil Procedure was appropriate in light of a Puerto Rico Insurance Code provision stating that "no action at law" shall be brought against an insurer or liquidator upon issuance of the order appointing the liquidator. *Id.* at 93. NNIC has not identified a similar provision of Louisiana law.

Accordingly, NNIC's Rule 12(b)(6) motion and the AK defendants' Rule 12(b)(1) motion are **DENIED.** Such concerns are better addressed through an analysis of the *Burford* abstention doctrine.[49]

## MOTION FOR STAY

NNIC and the AK defendants request, in the alternative, that the Court stay plaintiff's claims against those defendants pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The plaintiff has opposed the motion to stay.

### *BACKGROUND*

On March 8, 2007, the Dane County Circuit Court of Wisconsin entered an order of rehabilitation as to NNIC, granting the Wisconsin Insurance Commissioner ("Commissioner") the authority to place NNIC into rehabilitation pursuant to Wis. Stat § 645.32 and appointing the Commissioner as rehabilitator.[50] The order of rehabilitation adopted and incorporated the rehabilitation plan filed by the Commissioner.[51] Such order enjoined "[a]ll persons and entities . . . from commencing or prosecuting any actions, claims, lawsuits, administrative or other proceedings against NNIC" other than claims brought by third parties against NNIC's insureds

---

[49]The Court observes that in *All Star*, the Louisiana Supreme Court did not dismiss the plaintiff's claim for lack of subject matter jurisdiction. Instead, the court remanded the case to the court of appeals to consider the plaintiff's argument that the Pennsylvania liquidation court did not assert exclusive jurisdiction over plaintiff's claims for injunctive relief. 898 So. 2d at 383; *see also Steamship Mutual Underwriting Assoc. (Bermuda), Ltd. v. Sun Life Assurance Co. of Canada*, 965 So. 2d 883, 885 (La. Ct. App. 2007) (holding, pursuant to *All Star*, that court lacked subject matter jurisdiction over plaintiff's claims where the liquidation court "asserted its exclusive jurisdiction" over the assets of the insolvent insurance company and all matters related to the repayment of reinsurance to insureds). Defendants have not presented evidence that the Wisconsin rehabilitation court similarly asserted *exclusive jurisdiction* over claims such as those brought by plaintiff. *See Steamship Mutual*, 965 So. 2d at 885.

[50]R. Doc. No. 519-2, p. 1.

[51]*Id.* at p. 3.

and NNIC.[52] All persons and entities were further enjoined from obtaining any preferences, judgments, or other liens or making any levy against NNIC's assets or any part thereof.[53] The order stated that the Dane County Circuit Court would retain exclusive jurisdiction over all matters relating to NNIC's rehabilitation.[54]

The rehabilitation plan, adopted and incorporated by the rehabilitation order, stated that "NNIC is in possession of certain funds belonging to AFSG Holdings Inc., an intermediate parent company of NNIC, attributable to recent distributions made by the estate of American Druggists' Insurance Company in satisfaction of certain claims previously filed by Armco, Inc. (The 'ADIC Funds')."[55] The plan directed "[t]he Rehabilitator or [NNIC] [to] promptly return the ADIC funds to AFSG Holdings."[56]

As stated above, plaintiff filed a fifth amended complaint on December 16, 2009, adding allegations against NNIC and the AK defendants.[57] Among other claims, previously discussed at length in this opinion, plaintiff's fifth amended complaint sought to annul the transfer of funds from NNIC to AFSG Holdings, Inc. made pursuant to the rehabilitation order of the Wisconsin state court. On July 9, 2010, with plaintiff's consent, the Court dismissed plaintiff's claim to annul the transfer.[58]

---

[52]*Id.*

[53]*Id.*

[54]*Id.* at p. 4.

[55]R. Doc. No. 519-3, p. 3.

[56]*Id.* at p. 4.

[57]R. Doc. No. 497.

[58]R. Doc. No. 611.

## LAW AND ANALYSIS

### A. The Burford Abstention Doctrine

The *Burford* abstention doctrine stands as a narrow exception to the rule that federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). The *Burford* doctrine requires courts to "weigh the federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter." *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 700 (5th Cir. 1999) (citing *Quackenbush*, 517 U.S. at 728); *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361, 363, 109 S.Ct. 2506, 105, L.Ed.2d 298 (1989) ("*N.O.P.S.I.*"); *Burford*, 319 U.S. at 334)). "[T]his 'balance only rarely favors abstention.'" *Id.* (quoting *Quackenbush*, 517 U.S. at 728).

In applying *Burford* abstention, the court does not necessarily consider whether the cause of action is based on state or federal law, but instead looks at whether the plaintiff's claim is entangled in an area of state law that must be untangled before the federal case can proceed. *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997). Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) where there are "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case" or (2) "where federal adjudication of the case would disrupt state efforts to establish a coherent policy with respect to matters of substantial public importance." *Munich American*

*Reinsurance Co. v. Crawford*, 141 F.3d 585, 589 (5th Cir. 1998) (citing *N.O.P.S.I.*, 491 U.S. at 361).

The Fifth Circuit has identified five factors relevant to this determination: (1) whether the case arises under state or federal law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in the area; and (5) the presence of a special state forum for judicial review. *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993).

### B. Analysis

NNIC and the AK defendants contend that *Burford* abstention is warranted in this case because NNIC is subject to rehabilitation proceedings in Wisconsin. Plaintiff opposes abstention pursuant to *Burford.*

Plaintiff first argues that defendants have waived such argument by litigating in this Court for almost three years following the entry of the order of rehabilitation, including filing a motion for summary judgment in January, 2008.[59] NNIC contends that "only after [plaintiff] filed [her] Fifth Amended Complaint with new claims directly attacking NNIC's rehabilitation proceedings, did it become obvious and necessary for this case to be decided in Wisconsin."[60]

*Burford* abstention may be raised at any time, including on appeal, and it may be raised by a court sua sponte. *See Munich,* 141 F.3d at 588;  *Martin Ins. Agency, Inc. v. Prudential Reins. Co.*, 910 F.2d 249, 255 (5th Cir. 1990); s*ee also Fed. Express Corp. v. Tenn Pub. Serv. Com.*, 925 F.2d 962, 966-67 (6th Cir. 1991) (affirming district court's decision to abstain pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), despite the fact that the

[59]R. Doc. No. 530, p. 9.

[60]R. Doc. No. 547, p. 10 n.7.

defendant did not plead abstention in its answer, urged the district court to hold a hearing on the merits of the case, and argued for abstention only after the district court raised the issue sua sponte). The Court finds that NNIC has not waived the right to argue that *Burford* abstention is appropriate.

*Wilson Factors*

The Court turns to the first factor in *Wilson*, i.e., whether the cause of action arises under state or federal law. This case does not involve issues of federal law. Plaintiff brings claims against NNIC pursuant to Louisiana law alleging that NNIC breached its duty of good faith and fair dealing, committed fraud, and requested that NNIC's corporate veil be pierced premised on an alter ego theory of liability. The first *Wilson* factor would support *Burford* abstention.

Next, the Court considers the second factor in *Wilson*, i.e., whether the case requires inquiry into unsettled issues of state law or local facts. NNIC argues that this case involves issues of Wisconsin law because Wisconsin law governs the insurance policy at issue and NNIC's conduct.[61] However, NNIC has not demonstrated that the case involves *unsettled* issues of Wisconsin state law[62] or any facts local to Wisconsin.[63] Therefore, the second *Wilson* factor weighs against abstention. *See Holden v. Connex-Metalna Mgmt. Consulting GMBH*, 302 F.3d 358, 363 (5th Cir. 2002).

---

[61]R. Doc. No. 612, p. 9.

[62]NNIC has not identified any unsettled issues of Wisconsin insurance law at stake. With respect to plaintiff's request to pierce NNIC's corporate veil premised on an alter ego theory, pursuant to *Patin*, 294 F.3d at 647, this Court will look to Wisconsin alter ego jurisprudence because NNIC is a Wisconsin corporation. However, Wisconsin alter ego jurisprudence is well established. *See Olsen*, 419 N.W.2d 211.

[63]There is no argument that the applicable Louisiana law is unsettled.

The Court next considers the third *Wilson* factor, i.e., the importance of the state interest involved. NNIC contends that to allow plaintiff to pursue her claims against NNIC in federal court would undermine the purposes of Wisconsin's Insurers Rehabilitation and Liquidation Act ("WIRLA"). *See* Wisc. Stat. Ann. §§ 645.01(4)(a)-(f).[64] The WIRLA was designed to create a comprehensive, uniform scheme to address the insolvency of insurers. *See id*; *All Star*, 898 So. 2d at 370 (describing "[u]niformity and predictability in interstate relations regarding insurer delinquency and liquidation proceedings" as the objective of the Uniform Insurers Liquidation Act and the superceding Insurers Rehabilitation and Liquidation Model Act). Pursuant to the WIRLA, a state regulatory investigation of an insolvent creditor may culminate in the appointment of a receiver for the rehabilitation of the company and the processing of claims against it and, if necessary, its liquidation. *See* Wisc. Stat. Ann. §§ 645.31; 645.32.

---

[64] The purpose of WIRLA is:

> The purpose of this chapter is the protection of the interests of insureds, creditors, and the public generally, with minimum interference with the normal prerogatives of proprietors, through:
> (a) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures, neither unduly harsh nor subject to the kind of publicity that would needlessly damage or destroy the insurer;
> (b) Improved methods for rehabilitating insurers, by enlisting the advice and management expertise of the insurance industry;
> (c) Enhanced efficiency and economy of liquidation, through clarification and specification of the law, to minimize legal uncertainty and litigation;
> (d) Equitable apportionment of any unavoidable loss;
> (e) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state; and
> (f) Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

Wisc. Stat. Ann. §§ 645.01(4)(a)-(f).

However, as the Sixth Circuit explained in *AmSouth Bank v. Dale*, "[b]ecause *Burford* abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, looking behind the action to determine whether it implicates the concerns of *Burford* is necessary." 386 F.3d 763, 784 (6th Cir. 2004). Although "*Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 589 (5th Cir. 1994) (quoting *N.O.P.S.I.*, 491 U.S. at 362).

"Although the regulation of insolvent insurance companies is surely an important state interest, this case does not involve the complex and highly regulated issues of insurance regulation. . . . " *See Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953, 959 (3d Cir. 1993). Instead, this case involves relatively straight forward tort claims pursuant to Louisiana law. "The complex regulations relating to insolvent insurance companies have to do with plans of rehabilitation and payment to policy holders. Simple contract and tort actions that happen to involve an insolvent insurance company are not matters of important state regulatory concern or complex state interests." *Id.*  The Court finds that the third *Wilson* factor does not weigh in favor of abstention.[65]

---

[65]Plaintiff also argues that because this Court has diversity jurisdiction and "related to" bankruptcy jurisdiction there are important federal interests involved. The presence of diversity jurisdiction represents a federal interest in the administration "of impartial justice to diverse parties." *Webb*, 174 F.3d at 703 n. 8.  The presence of "related to" bankruptcy jurisdiction similarly demonstrates a federal interest. However, the presence of diversity jurisdiction or "related to" bankruptcy jurisdiction, without more, may not be sufficient to deny abstention pursuant to *Burford*. *See id.* at 703; *Wilson*, 8 F.3d at 315.

The Court turns next to the fourth *Wilson* factor, i.e., the state's need for a coherent policy in the regulation of insolvent insurers. NNIC argues that in bringing all actions against NNIC to the rehabilitation court, NNIC has attempted to maintain uniformity pursuant to the WIRLA.[66]

Minimizing the burden of litigation is an important purpose of rehabilitation proceedings. *See* Wis. Stat. § 645.01(4)(c)(identifying the minimization of litigation as a purpose of the WIRLA). As the Third Circuit explained in *Grode*:

> [C]ourts abstain in suits against insolvent insurance companies for the same reasons that district courts refer bankruptcy cases to the bankruptcy courts: Insurance companies tend to issue identical policies to a large number of people, rendering a single forum necessary to dispose equitably of the company's limited assets so as to avoid a race to the courthouse.

8 F.3d at 960.

NNIC argues that in the absence of this Court's stay pursuant to *Burford*, "NNIC, like any other insurer subject to rehabilitation, faces a tremendous risk of having its assets dissipated in defense of actions across the country."[67] Such argument is less than convincing in light of the fact that NNIC has been content to litigate this case in federal court for nearly three years after being placed into rehabilitation, including filing a motion for summary judgment in January, 2008. *See Clark v. Underwriters Mgmt Co.*, 2003 WL 21148420 at *7 (N.D. Ill. May 16, 2003).[68]

---

[66]R. Doc. No. 612, p. 6.

[67]*Id.*

[68] As the court explained in *Underwriters Mgmt*:

> Plaintiff argues that federal courts have recognized Illinois' regulation of the insurance industry as a special forum, justifying abstention. *See Hartford Casualty Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 426 (7th Cir.1990). The issues in Meier's counterclaim do not invoke public policy; they are standard common law claims. Furthermore, by litigating Meier's counterclaim for three years in this court, up to and including requesting the court to enter judgment on

Moreover, this case is distinguishable from *Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997), a case cited by NNIC. In *Clark*, Richard Clark ("Clark"), an administrator of certain insurance policies issued by two Texas insurers and reinsured by American Bonding Co. ("ABC"), filed claims in federal court against ABC and Michael FitzGibbons ("FitzGibbons"), the special deputy receiver appointed by the State of Arizona to oversee claims filed against ABC. As the Fifth Circuit summarized:

> The complaint asserted claims for breach of contract, indemnification, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. The action was framed in part as a putative class action, with Richard Clark as named plaintiff representing the interests of various John Doe plaintiffs, the individuals insured through the Clark agency whose policies were reinsured by ABC. The plaintiffs variously sought compensatory damages, exemplary damages, and an injunction to prevent ABC from "[m]isappropriating or using funds which should lawfully be applied to pay for the claims incurred and damages sustained by the Doe plaintiffs."

*Id.* at 1051. The Fifth Circuit held that *Burford* abstention was appropriate because the *Clark* plaintiffs sought "to leapfrog ahead of all other claimants, who are bound to bring their claims before the Arizona receiver. . . [and because] permitting these plaintiffs to proceed in federal court in Texas would start a race to the courthouse in any jurisdiction where claims against [the insolvent insurer] might have arisen. The administrative structure established by Arizona to rehabilitate or liquidate insolvent insurers would swiftly crumble." *Id.* at 1051.

In this case, plaintiff is not attempting to "leapfrog ahead" of other claimants. Plaintiff filed claims against NNIC in 2002, nearly five years before NNIC was placed into rehabilitation

---

that counterclaim, Plaintiff has fatally undermined any argument that Meier's counterclaim is a claim that should be adjudicated in a different and special forum to avoid disruption of a state policy.

2003 WL 21148420 at *7.

proceedings. Subsequent to being placed into rehabilitation, NNIC defended plaintiff's claims in federal court for nearly three years before requesting a stay pursuant to *Burford*. NNIC has not identified any similarly situated plaintiffs who might initiate claims against NNIC in federal court should plaintiff be permitted to proceed in this forum. *See Underwriters Mgmt*, 2003 WL 21148420 at *7. The Court does not find that allowing plaintiff to proceed in this forum will ignite "a race to the courthouse."

In an amicus brief, the Wisconsin Commissioner of Insurance and the Special Deputy Rehabilitator of NNIC argue that this permitting the above-captioned case "could directly impact the assets of the NNIC rehabilitation estate."[69] However, a financial effect on the rehabilitation estate is not sufficient where, as here, adjudication of this case will have at most an indirect effect on the rehabilitation by potentially giving rise to an additional claim against the insurance company. *See Sevigny v. Emp'rs Ins. of Wausau*, 411 F.3d 24, 29 (1st Cir. 2005); *Fragoso v. Lopez*, 991 F.2d 878, 884 (1st Cir. 1993). With respect to the fourth *Wilson* factor, NNIC has not demonstrated that allowing this plaintiff to proceed in federal court would be disruptive of Wisconsin's efforts to establish a coherent policy relative to insolvent insurers.

Last, the Court considers the fifth *Wilson* factor, i.e., the presence of a special state forum for judicial review. NNIC argues that the rehabilitation court, the Dane County Circuit Court of Wisconsin, constitutes a special state forum for judicial review and that the rehabilitation court is the proper forum for plaintiff's claims. This last factor would support abstention.

Considering and balancing the above factors, the Court finds that *Burford* abstention is not warranted in this case. It is true that Courts frequently abstain "in deference to state insurance insolvency or liquidation proceedings." *Clark*, 105 F.3d at 1052*; see also Callon*, 351 F.3d at

---

[69]R. Doc. No. 531, p. 8.

209; *Barnhardt Marine Ins. v. New England Int'l Sur. of Am., Inc.*, 961 F.2d 529, 531 (5th Cir. 1992). However, there is no per se rule requiring a federal court to abstain whenever one of the parties in the action is an insurance company involved in state liquidation or rehabilitation proceedings. *See Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1047 (3d Cir. 1988); *see also N.O.P.S.I.*, 491 U.S. at 362 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process."). In the context of a lawsuit against an insolvent insurer, courts have refrained from *Burford* abstention when resolution of the case would not "substantially interfere in the administration of [the insurance company's] assets by . . . state authorities." *Holden*, 302 F.3d at 364; *see also Fragoso*, 991 F.2d at 884.

Moreover, although the Wisconsin state court rehabilitation proceedings may preclude enforcement of any judgment against NNIC, the Court fails to see how the adjudication of this case in this forum would substantially interfere in the administration of NNIC's assets by Wisconsin state authorities. *See Holden*, 302 F.3d at 364. In fact, NNIC concedes that "only after [plaintiff] filed his Fifth Amended Complaint with new claims directly attacking NNIC's rehabilitation proceedings, did it become obvious and necessary for this case to be decided in Wisconsin."[70] The claim to annul the funds transfer has since been dismissed. The motions to stay pursuant to *Burford* shall be denied.

## CONCLUSION

For the reasons stated above,

---

[70]R. Doc. No. 547, p. 10 n.7.

**IT IS ORDERED** that the motion to dismiss[71] filed by the AK defendants is **GRANTED** with respect to plaintiff's conspiracy claim and **DENIED** with respect to plaintiff's fraud claim and plaintiff's request to pierce the corporate veil.

**IT IS FURTHER ORDERED** that the motion[72] to dismiss for lack of personal jurisdiction and subject matter jurisdiction filed by the AK defendants is **DENIED.**

**IT IS FURTHER ORDERED** that NNIC's motion[73] to dismiss pursuant to 12(b)(6) is **DENIED.**

**IT IS FURTHER ORDERED** that the motions[74] to stay pursuant to *Burford* filed by the AK defendants and NNIC are **DENIED.**

New Orleans, Louisiana, August 2, 2010.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[71]R. Doc. No. 507.

[72]R. Doc. No. 507.

[73]R. Doc. No. 519.

[74]R. Doc. No. 507; 519.