UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

H.S. STANLEY, JR., ET AL.                      CIVIL ACTION

VERSUS                                         No. 02-1235

CLARE W. TRINCHARD, ET AL                      SECTION I

## ORDER & REASONS

Defendants, Clare Trinchard and Trinchard & Trinchard, L.L.C. (the "Trinchard defendants"), have filed a motion for summary judgment. Plaintiff has filed an opposition. For the following reasons, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART.**

### *BACKGROUND*

The facts of this case are set forth in two opinions by the U.S. Court of Appeals for the Fifth Circuit, *Stanley v. Trinchard*, 500 F.3d 411 (5th Cir. 2007)("*Trinchard I*")[1] and *Stanley v. Trinchard*, 579 F.3d 515 (5th Cir. 2009)("*Trinchard II*").[2] In the early 1980's, Gary Hale ("Hale"), a detective employed by the St. Tammany Parish Sheriff, was insured under a policy issued by American Druggists Insurance Company ("ADIC").[3] NNIC reinsured ADIC and, by

---

[1] R. Doc. No. 373.

[2] R. Doc. No. 483.

[3] R. Doc. No. 1, p. 5; R. Doc. No. 373, p. 6.

1

virtue of ADIC's insolvency, assumed responsibility under the policy issued to Hale.[4] In 1991, Gerald Burge ("Burge") filed a lawsuit against Hale and the St. Tammany Parish Sheriff pursuant to 42 U.S.C. § 1983, stemming from Burge's 1986 wrongful murder conviction ("Burge lawsuit").[5] A multi-million dollar judgment against Hale forced him into involuntary bankruptcy in October 2001.[6]

In 2002, the appointed trustee[7] of Hale's bankruptcy estate brought claims under Louisiana law, alleging that in the course of defending and settling some of Burge's claims, the Trinchard defendants committed legal malpractice by breaching their professional and fiduciary duties to Hale and that NNIC breached a duty of good faith and fair dealing to Hale.[8]

On December 16, 2010, plaintiff filed a fifth amended complaint adding allegations that the Trinchard defendants are liable to Hale for "acts of conspiracy and fraud."[9] Plaintiff apparently filed the fifth amended complaint to allege, at least in part, that acts of the Trinchard defendants, detailed by plaintiff in paragraphs 33 and 34 of plaintiff's earlier complaints, also

---

[4] R. Doc. No. 1, p. 5; R. Doc. No. 373, pp. 6-7.

[5] R. Doc. No. 1, p. 5; R. Doc. No. 373, pp. 3-4.

[6] R. Doc. No. 373, pp. 9-10; R. Doc. No. 483, p. 4.

[7] R. Doc. No. 1; R. Doc. No. 483, p. 4. H.S. Stanley, Jr. ("Stanley"), in his capacity as a trustee of Hale's bankruptcy estate, filed the above captioned lawsuit in 2002. *See* R. Doc. No. 1. On May 19, 2010, Stanley was replaced by Kimberly Lentz, who currently serves as interim trustee of Hale's bankruptcy estate. R. Doc. No. 559.

[8] R. Doc. No. 1.

[9] R. Doc. No. 497, p. 6 ¶¶ 33, 34. Specifically, plaintiff's fifth amended complaint states that "the main body of paragraph 33" shall be amended to read as follows: "Clare W. Trinchard, Esq. is liable to Mr. Hale for the following non-exhaustive negligent acts, breaches of professional and fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud. . ." and "the main body of paragraph 34" shall be amended to read as follows: "Trinchard & Trinchard, L.L.C. is liable to Mr. Hale for the following non-exhaustive negligent acts, breaches of professional and fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud. . . ." *Id.*

constituted fraud and conspiracy.[10]

The Trinchard defendants filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the allegations of fraud and conspiracy in plaintiff's fifth amended complaint with respect to those defendants. On June 8, 2010, the Court denied the motion with respect to plaintiff's fraud claims and granted the motion with respect to plaintiff's conspiracy claim.

## LAW & ANALYSIS

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of

---

[10]Plaintiff's allegations against Claire Trinchard are described in paragraph 33 of plaintiff's original complaint as well as in subsequent amendments to paragraph 33 in plaintiff's first and fourth amended complaints. *See* R. Doc. Nos. 1, 44, 200. Plaintiff's allegations against Trinchard & Trinchard, L.L.C. are listed in paragraph 34 of plaintiff's original complaint and in the subsequent amendments to paragraph 34 in plaintiff's first and fourth amended complaints. *See* R. Doc. Nos. 1, 44, 200.

material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

    *B. Louisiana Revised Statute 9:5605*

Louisiana Revised Statute 9:5605 states that an "action for damages . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services" is subject to a peremption period of one year from the date of the "alleged act, omission, or neglect" or one year from the date on which such "alleged act, omission, or neglect is discovered or should have been discovered." La. Rev. Stat. 9:5605(A).[11] Moreover, legal

---

[11]Louisiana Revised Statute 9:5605 states:
 *Actions for legal malpractice*
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal

4

malpractice actions are also subject to a peremption period of three years from the date of the alleged act, omission, or neglect. *Id.* As the Louisiana Third Circuit Court of Appeal explained in *Atlas Iron and Metal Co. v. Ashy*:

> There are two ways to start the peremption clock running under La. R.S. 9:5605. The peremption period will begin to run one year from the date when a client knew or should have known about the act, omission, or negligence on the part of his or her attorney that indicates that the client may be a victim of an act of malpractice. *See* La.R.S. 9:5605(A). Additionally, the peremption clock will start running on the date of the act, omission, or negligence that allegedly constitutes malpractice, and will toll three years from that date regardless of whether a client discovered, knew, or should have known about the attorney's alleged malpractice. *Id.* [12]

918 So. 2d 1205, 1209-10 (La. Ct. App. 2006).

The Louisiana Supreme Court has explained that, pursuant to Louisiana Revised Statute

---

services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.

D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

[12]R. Doc. No. 575, p. 6.

9:5605, a cause of action for legal malpractice can perempt even if the client never discovers that cause of action, or the facts never ripen into a justiciable case. *Reeder v. North*, 701 So.2d 1291, 1295-96 (La. 1997). "[T]here is no doubt that the [Louisiana] Legislature intended that three years after the 'act, omission, or neglect,' the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period." *Id*. at 1297. "If no damages are incurred within three years of the act, omission, or negligence, the cause of action and right of action perempts regardless." *Atlas*, 918 So.2d at 1213 (citing *Reeder*, 701 So.2d at 1297).

In *Trinchard II*, the Fifth Circuit declined to determine when plaintiff's legal malpractice claim accrued, but found that plaintiff's legal malpractice claim was timely filed because 11 U.S.C. § 108(a) of the U.S. Bankruptcy Code "expressly allowed [plaintiff] to bring claims on behalf of the estate until October, 2003," or until two years after Hale was forced into involuntary bankruptcy in October, 2001.[13] 579 F.3d at 520.

*Plaintiff's Claims in the Original and First Amended Complaints*

The Trinchard defendants contend that much of their alleged misconduct is not actionable because any claims based on such alleged misconduct are preempted pursuant to Louisiana Revised Statute 9:5605. Specifically, the Trinchard defendants identify the following allegations in plaintiff's complaints as having occurred before 1998:

> ¶33a (allegedly having a conflict of interest between NNIC and Hale in the defense of the Burge claims and as to the available limits of coverage); ¶33b (allegedly failing to disclose pecuniary relationship with NNIC); ¶33c (allegedly having a conflict of interest in defending NNIC while at the same time negotiating

---

[13] "Bankruptcy Code Section § 108(a) allows a trustee to commence an action on behalf of the debtor's estate within the period allowed by state law for such an action or within two years after the order for relief, whichever is later." *Trinchard II*, 579 F.3d at 517.

6

a settlement on behalf of NNIC and Hale); ¶33d (allegedly failing to defend Hale in the face of NNIC's attempts to limit coverage); ¶33e (allegedly failing to disclose conflict of interest defending Sheriff and Hale); ¶33f (allegedly limiting Hale's representation to NNIC's policy period and shifting liability to actions and periods beyond NNIC' policy period); ¶33j (allegedly failing to disclose conflicts of interest to Hale); ¶33n (allegedly participating in a litigation strategy in which NNIC was able to breach its fiduciary duty to Hale); ¶33o (allegedly failing to properly supervise Leigh Ann Schell); ¶33p (allegedly failing to investigate additional insurance coverage for Burge's claims); ¶33q (allegedly failing to discover excess insurance and to put excess carrier on notice); ¶33r (alleged breaches of professional care, skill and diligence).[14]

It is unclear from plaintiff's complaint and from defendants' motion for summary judgment, whether the above acts, omissions, or negligence actually occurred before 1998. Plaintiff contends that "for purposes of Plaintiff's claims, these allegations focus on conduct that occurred in the time immediately leading up to the November, 2000 settlement with Burge, i.e.[,] well within three years of October, 2001."[15] Plaintiff avers that "the ultimate causes of the damages in this case are the Trinchards' conduct and nondisclosures in connection with the November, 2000 settlement NNIC reached with Burge and their own conduct following that settlement."[16] As stated, to the extent that the above events occurred in or after October 16, 1998 they are not perempted.

To the extent that any of these events occurred before October 16, 1998, they would be perempted. Plaintiff argues that "even those actions on the part of the Trinchards which took place more than three years prior to October, 2001 did not become actions of fraud and malpractice until they caused damages to the Plaintiff (damages being essential to claims of

---

[14]R. Doc. No. 553-2, p. 13.

[15]R. Doc. No. 575, p. 6.

[16]R. Doc. No. 575, p. 6.

7

fraud and malpractice)."[17] However, pursuant to Louisiana Revised Statute 9:5605, even if the client does not incur any damages within three years of the attorney's act, omission, or negligence, the cause of action perempts. *Atlas*, 918 So. 2d at 1212-13; *Reeder*, 701 So. 2d at 1297. Because there are genuine issues of material fact as to whether the conduct alleged by plaintiff occurred before October 16, 1998, summary judgment on the above claims is not warranted.

*Plaintiff's Fraud Claim*

As stated, on December 16, 2010, plaintiff filed a fifth amended complaint adding allegations that the Trinchard defendants are liable to Hale for "acts of . . . fraud."[18] The fifth amended complaint did not add any new factual allegations with respect to the Trinchard defendants. This Court held on June 8, 2010 that plaintiff had stated a claim for fraud that could plausibly entitle plaintiff to relief.[19]

Defendants argue that prior to the fifth amended complaint, the Trinchard defendants were not on notice that plaintiff was pleading fraud.[20] Defendants contend that because plaintiff's fraud claim is perempted pursuant to Louisiana Revised Statute 9:5605(A), such claim cannot relate back to plaintiff's original complaint. Plaintiff argues that the fraud claim relates

---

[17]*Id.*

[18]R. Doc. No. 497, p. 6 ¶¶ 33, 34. Specifically, plaintiff's fifth amended complaint states that "the main body of paragraph 33" shall be amended to read as follows: "Clare W. Trinchard, Esq. is liable to Mr. Hale for the following non-exhaustive negligent acts, breaches of professional and fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud. . ." and "the main body of paragraph 34" shall be amended to read as follows: "Trinchard & Trinchard, L.L.C. is liable to Mr. Hale for the following non-exhaustive negligent acts, breaches of professional and fiduciary duty, breach of good faith and fair dealing, and acts of conspiracy and fraud. . . ." *Id.*

[19]R. Doc. No. 581.

[20]R. Doc. No. 632, p. 3.

back to her original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure[21] which allows a party to amend a pleading "despite an applicable statute of limitations in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future, related claims." *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

As the Fifth Circuit has explained, "the focus is 'not . . . the caption given a particular cause of action, but . . . the underlying facts upon which the cause of action is based.'" *Johnson v. Crown Enter., Inc*., 398 F.3d 339, 342 (5th Cir. 2005) (quoting *Watkins v. Lujan*, 922 F.2d 261, 265 (5th Cir.1991). "'The purpose of the rule is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation.'" *Id*. (quoting *Longbottom v. Swaby*, 397 F.2d 45, 48 (5th Cir. 1968)).

Relation back "does not extend the limitations period, but merely recognizes that the purposes of the statute are accomplished by the filing of the initial pleading." *Kansa*, 20 F.3d at 1367. "Rule 15(c)'s relation back doctrine, though it has the ultimate effect of 'tolling' limitations, is considered by this court to be purely procedural and is thus governed by federal law." *Id.* at 1367 n.4. (citing *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir.), cert.

---

[21]Rule 15(c) of the Federal Rules of Civil Procedure provides:
(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
(i) received such notice of the action that it will not be prejudiced in defending on the merits; and
(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

9

denied, 493 U.S. 851, 110 S. Ct. 150, 107 L. Ed.2d 108 (1989) ("[F]ederal law regarding relation back of amendments to pleadings is controlling in diversity cases in federal court.")).

The Trinchard defendants argue that Louisiana courts do not allow claims barred by peremption periods to "relate back" to a timely filed original complaint. However, in this case, the Federal Rules of Civil Procedure, rather than the Louisiana rules, govern whether plaintiff's claims relate back. Because Rule 15(c)(B) permits a party to amend a pleading "*despite an applicable statute of limitations* in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future, related claims,"[22] it is not relevant whether a Louisiana court would permit plaintiff's fraud claims to relate back to plaintiff's original pleading.[23]

The Court must consider whether plaintiff's fraud claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Plaintiff's original complaint alleged that the Trinchard defendants committed "breaches of professional and fiduciary duty constituting legal malpractice."[24] Plaintiff's original complaint alleged that the Trinchard defendants formed an attorney-client relationship with

---

[22]*Kansa,* 20 F.3d at 1366 (emphasis added).

[23]Moreover, Louisiana courts are divided as to whether a legal malpractice claim premised on fraud is subject to a one-year *prescriptive* period or a one-year *peremptive* period pursuant to 9:5605(E). Louisiana Revised Statute 9:5605(E) states: "The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953." La Rev. Stat. 9:5605(E). The Louisiana First Circuit Court of Appeal has held that the fraud exception in 9:5605(E) applies to both the one-year and the three-year peremptive periods. *See Trailer Outlet, Inc. V. Dutel*, 2010 WL 2342753 at *3 n.2 (La. App. 1 Cir. Jun. 11, 2010) (citing *Coffey v. Block*, 762 So. 2d 1181, 1187 (La. App. 1 Cir. 2000)). The Louisiana Second and Third Circuit Courts of Appeal have held that the fraud exception in 9:5605(E) refers only to the three-year peremptive period in 9:5605(A) and not to the one-year peremptive period. *Dauterive Contractors, Inc. v. Landry and Watkins*, 811 So.2d 1242, 1260-61 (La. App. 3 Cir. 2002); *Orea v. Bryant*, 979 So.2d 687, 690 (La. App. 2 Cir. 2008). Having found that the Federal Rules of Civil Procedure govern whether a claim in an amended pleading may relate back to the original complaint, the Court declines to such issue.

[24]R. Doc. No. 1, p. 9.

Hale[25] and that Clare Trinchard failed to disclose her ongoing loyalty to NNIC, failed to adequately explain the terms of the settlement agreement between Burge and NNIC, and advised Hale to execute settlement documents which were adverse to his interests.[26] Plaintiff's original complaint alleges that Hale's consent to the settlement precluded him from a defense underwritten by NNIC at trial, continued to expose Hale to undisclosed liability to Burge, and ultimately resulted in an adverse judgment against Hale.[27]

Plaintiff's fraud claim, discussed at length in this Court's previous order and reasons,[28] arises out of the alleged conduct detailed above. Therefore, the Court finds that plaintiff's fraud claim arises out of the same conduct, transaction, or occurrence alleged in the original complaint and it further finds that plaintiff's fraud claim relates back to the filing of the original complaint pursuant to Rule 15(c)(2). Plaintiff's fraud claim is not perempted by Louisiana law.

*C. Clean Hands Doctrine*

The Trinchard defendants argue that the clean hands doctrine and/or the doctrine of *in pari delicto* bars plaintiff's claims against them. The Louisiana Supreme Court explained the clean hands doctrine as follows:

> [I]t is axiomatic that while a court of equity endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigants who come before it as plaintiffs in such controversies. This fundamental principle is expressed in the maxim: 'He who comes into a court of equity must come with clean hands.' This doctrine

---

[25]*Id.*

[26]*Id.* at pp. 9-11.

[27]*Id.* at pp. 7-8.

[28]R. Doc. No. 581, pp. 8-11.

11

> universally affects the entire administration of equity jurisprudence as a system of remedies and remedial rights.
>
> It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of courts of equity to suppress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. Manifestly, under this maxim any act which would be condemned and pronounced wrongful by honest and fair-minded men must be held sufficient to make the hands of one who seeks equity unclean.

*Cimarex Energy Co. v. Mauboules*, --- So. 3d ----, 2010 WL 1531363 at * 12 (La. Apr. 9, 2010) (quoting *City of New Orleans v. Levy*, 233 La. 844, 865-866, 98 So. 2d 210, 218 (La. 1957)).

Quoting a decision by the U.S. Fifth Circuit Court of Appeals, the Second Circuit Court of Appeal of Louisiana explained the doctrine of *in pari delicto* as follows: "'[T]he fault of the parties must be mutual, simultaneous, and relatively equal, and the plaintiff must be an active, essential, and knowing participant in the unlawful activity.'" *Goldblum v. Boyd*, 341 So.2d 436, 444 (La. App. Ct. 1977) (quoting *Woolf v. S. D. Cohn & Co.*, 515 F.2d 591 (5th Cir. 1975), *vacated on other grounds*, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (U.S. 1976)).[29]

---

[29] Additionally, the Fifth Circuit discussed the clean hands doctrine and the doctrine of *in pari delicto* with respect to federal law claims in *Dahl v. Pinter* as follows:

> Not any act suffices to bring into play the doctrines of *in pari delicto* and unclean hands. As the Supreme Court points out in *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), the doctrines apply "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Id.* at 245, 54 S.Ct. at 147 (emphasis supplied). The unclean hands and *in pari delicto* maxims operate against conduct which is contrary to the dictates of good conscience or fair dealing. 2 Pomeroy, Equity Jurisprudence, 92-94 (5th ed. 1941); *United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir.1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); *Deseret Apartments v. United States*, 250 F.2d 457 (10th Cir.1957); *see also United States v. I-12 Garden Apartments*, 703 F.2d 900 (5th Cir.1983). Moreover, the maxims refer "to willful misconduct rather than to merely negligent conduct. The improper conduct which falls within the maxim must involve intention as opposed to an inadvertent act or a misapprehension of legal rights; the conduct must be morally reprehensible as to known facts." 30 C.J.S. Equity § 95, at 1022 (1965); (citations omitted); *Preload Technology, Inc. v. A.B. & J.*

*Waiver*

Substantive state law determines what constitutes an affirmative defense. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986); *Seal v. Industrial Elec., Inc.*, 362 F.2d 788, 789 (5th Cir. 1966). "However, 'the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs.'" *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (quoting *Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th Cir. Unit B 1981)). As the Fifth Circuit explained in *Arismendez*, "Rule 8(c) of the Federal Rules of Civil Procedure 'requires that an affirmative defense be set forth in a defendant's responsive pleading. Failure to comply with this rule, usually results in a waiver.'" 493 F.3d at 610 (quoting *Lucas*, 807 F.2d at 417). "[A] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Rogers v. McDorman* 521 F.3d 381, 385 (5th Cir. 2008) (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)).

"Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Arismendez*, 493 F.3d at 610 (internal citations and quotations omitted). "More specifically, a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.* (internal citations and quotations

---

*Construction Co.*, 696 F.2d 1080 (5th Cir.1983).

*Dahl v. Pinter*, 787 F.2d 985, 988 (5th Cir. 1986), *vacated on other grounds*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

omitted).[30]

Under Louisiana law, the clean hands doctrine[31] and the doctrine of *in pari delicto*[32] are affirmative defenses. To the extent that the Trinchard defendants have not specifically pled the affirmative defenses of clean hands and *in pari delicto* in their answers,[33] they may have waived such defenses.[34]

*Clean Hands Doctrine & In Pari Delicto Doctrine*

The Trinchard defendants have failed to identify any cases in which a Louisiana court has applied the clean hands doctrine to bar a client's legal malpractice claim against his former attorney. Moreover, defendants have not demonstrated that Hale is acting in bad faith or that Hale resorted to "injustice, unfairness and unrighteous dealing" with respect to plaintiff's allegations of legal malpractice against defendants. *Cimarex*, 2010 WL 1531363 at * 12.

It is clear that the doctrine of *in pari delicto* does not apply. As the Fifth Circuit explained, the *in pari delicto* doctrine "is a corollary of the unclean hands maxim, the principal

---

[30] "In discussing the pleading requirement for affirmative defenses, [the Fifth Circuit] [has] said that the central purpose for the requirement 'is the prevention of unfair surprise.'" *Reasoner v. Housing Authority of City of Teague,* 286 F. App'x 878, 880 (5th Cir. 2008) (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)).

[31] *See Allvend, Inc. v. Payphone Commissions Co.*, 804 So. 2d 27, 31 (La. Ct. App. 2001).

[32]*Goldblum*, 341 So.2d at 444.

[33]R. Doc. No. 46; R. Doc. No. 166; R. Doc. No. 167.

[34]Although Rule 15(a)(2) of the Federal Rules of Civil Procedure permits a party to amend its pleadings "with the opposing party's written consent or the court's leave," the Trinchard defendants have not requested to amend their answer to plead the clean hands and/or *in pari delicto* doctrines as affirmative defenses. Fed. R. Civ. P. 15(a)(2).
Although the Trinchard defendants have asserted that "any damages suffered by Gary Eugene Hale were his own fault or the fault of third parties for whom defendants are not responsible," the Court need not consider whether such allegations amount to a waiver of the clean hands and/or *in pari delicto* defenses because defendants have not demonstrated that those doctrines apply in this case.

14

difference being that the *in pari delicto* doctrine technically applies only when the plaintiff's fault is substantially equal to the defendants." *Pinter*, 787 F.2d at 988. The *in pari delicto* doctrine bars recovery by a plaintiff who is an "'active, voluntary participant in the unlawful activity that is the subject of the suit. *Plaintiffs who are truly in pari delicto are those who have violated the law in cooperation with the defendant*.'" *In re Enron Corp. Securities, Derivative & "'ERISA" Litigation*, 511 F. Supp.2d 742, 812 n. 71 (S.D. Tex. 2005) (quoting *Granite Partners, L.P. v. Bear Sterns & Co., Inc*., 17 F. Supp. 2d 308 (S.D.N.Y. 1998) (quoting *Pinter*, 486 U.S. at 632)) (emphasis added).[35]

In this case, plaintiff is not alleging that the Trinchard defendants were negligent in failing to advise Hale with respect to his conduct in Burge's 1986 wrongful murder conviction. The above-captioned case is based solely on the alleged legal malpractice of the Trinchard defendants as Hale's counsel in Burge's 42 U.S.C. § 1983 lawsuit. The Trinchard defendants have not alleged that Hale was a voluntary participant in defendants' alleged malpractice or that Hale is equally at fault for any alleged legal malpractice committed by the Trinchard defendants. Even assuming that the Trinchard defendants adequately pled the affirmative defenses of the clean hands doctrine and/or *in pari delicto* in their answers, those defendants have not demonstrated that such doctrines preclude plaintiff's recovery in this case.

*D. Plaintiff's Malpractice Claim*

The Trinchard defendants also argue that plaintiff's malpractice claim fails as a matter of

---

[35]Courts have found that the *in pari delcito* doctrine bars a legal malpractice claim against an attorney, where the plaintiff has knowingly or voluntarily violated the law and subsequently attempted to recover from his former attorney for advising him to violate the law or for failing to prevent him from doing so. *See Whiteheart v. Waller*, 681 S.E. 2d 419 (N.C. App. 2009); *Choquette v. Isacoff*, 836 N.E. 2d 329 (Mass. App. Ct. 2005); *Evans v. Cameron*, 360 N.W.2d 25 (Wis. 1985).

law because plaintiff cannot show that any alleged negligence or fraud on the part of the Trinchard defendants caused plaintiff's damages. "Under Louisiana law, a plaintiff asserting a legal malpractice claim must prove "(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence." *Trinchard I*, 500 F.3d at 422.[36]

Having reviewed the parties' memoranda, the facts of this case, and the applicable law, the Court finds that genuine issues of material fact exist with respect to whether plaintiff can prove the causation elements of the legal malpractice claim.

*E. Breach of Duties under Louisiana Insurance Law*

Defendants contend that plaintiff's claims arising under or implying a violation of Louisiana insurance law, specifically "the duty to defend," should be dismissed because the Trinchard defendants are not insurance companies.[37] In her opposition, plaintiff alleges that because she alleged that the Trinchard defendants conspired with NNIC, they are liable for the alleged violations of Louisiana insurance law attributable to NNIC, including the "duty to

---

[36]Louisiana courts also recognize that a legal malpractice claim may be premised on fraud. *See, e.g., Brumfield v. McElwee*, 976 So. 2d 234, 240 (La. App. Ct. 2008); *Smith v. Slattery*, 877 So.2d 244, 249 (La. App. Ct. 2004).

[37]R. Doc. No. 553-2. The Louisiana Supreme Court has explained the duty to defend as follows:

Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured.

*Weaver v. CCA Industries, Inc.*, 529 F.3d 335, 340 (5th Cir. 2008) (quoting *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993)).

16

defend."[38]

Because the Court has dismissed plaintiff's conspiracy claims against the Trinchard defendants and against NNIC, the Court need not discuss whether such allegation would amount to a viable cause of action. Plaintiff's claim that the Trinchard defendants breached a "duty to defend" under Louisiana insurance law must be dismissed.

*F. Duty to Inform Hale of Excess Insurance*

The Trinchard defendants contend that they did not have a duty to investigate or to discover whether Hale was covered by any additional insurance. The Trinchard defendants have not directed the Court to any Louisiana caselaw discussing whether an attorney has a duty under Louisiana law to investigate and advise a client with respect to excess insurance coverage. Nor has the Court uncovered such jurisprudence.

Plaintiff states in her opposition:

The Trinchards misunderstand the plaintiff's allegation that they failed to identify and disclose excess coverage that could have been available to Hale. Plaintiff's claim is that the Trinchards knew of potential excess coverage and failed to disclose this to Hale. The information regarding the potential excess coverage was in the Trinchards' possession. Therefore, although an attorney or primary insurer may not have an affirmative duty to investigate and identify possible excess coverage, an attorney certainly has a duty to disclose to his client material information essential to his case if he does in fact become aware of such information.[39]

Although the Trinchard defendants argue that they were not aware of any excess insurance coverage at the time that they represented Hale, a July 21, 2000 letter to Scott Schafer of NNIC, signed by Leigh Ann Schell, counsel for Hale, and Michelle Gaudin, counsel for the

---

[38]R. Doc. No. 575, p. 16.

[39]R. Doc. No. 575, p. 16-17 (emphasis in original).

17

Sheriff, mentions the possibility of additional insurance coverage through Lincoln Insurance Company and states, "it is unclear whether insurance was ever obtained through Lincoln Insurance Company."[40]  To the extent that plaintiff is claiming that the Trinchard defendants knew or should have known of potential excess insurance and failed to disclose the same to Hale, summary judgment is not appropriate as genuine issues of material fact exist with respect to whether such conduct amounted to legal malpractice.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the motion for summary judgment with respect to plaintiff's claim that the Trinchard defendants breached a "duty to defend" under Louisiana insurance law is **GRANTED** and such claim is **DISMISSED WITH PREJUDICE.**  The motion for summary judgment is **DENIED** with respect to plaintiff's remaining claims.

New Orleans, Louisiana, August 9, 2010.

**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[40]R. Doc. No. 575-6, p. 6. Counsel for the Trinchard defendants informed the Court on August 5, 2010 that his clients had no objection as to the authenticity of such letter.